STIFFT *v.* W. B. WORTHEN COMPANY.

Opinion delivered May 14, 1928.

208

*Cockrill & Armistead,* for appellant.

*Frauenthal & Johnson, Rose, Hemingway, Cantrell & Loughborough,* for appellee.

HART, C. J., (after stating the facts). The first ground relied upon for a reversal of the decree is that the chancery court had no jurisdiction. It is the settled rule in this State that a court of equity will not entertain suit brought solely for the purpose of interpreting a will, or to interpret a will disposing of purely legal estates, but it is equally well settled that equity will take jurisdiction when trust relations are created with reference to the property devised under the will. *Williamson* v. *Grider,* 97 Ark. 588, 135 S. W. 361; *Heiseman* v. *Lowenstein,* 113

Ark. 404, 169 S. W. 224; *Booe* v. *Vinson,* 104 Ark. 439, 149 S. W. 524; *Le Flore* v. *Handlin,* 153 Ark. 421, 240 S. W. 712; *Gaines* v. *Arkansas National Bank,* 170 Ark. 679, 280 S. W. 993; and *Norris* v. *Johnson,* 151. Ark. 189, 235 S. W. 804.

In the instant case it cannot be said that only legal rights are involved. The executors are specifically designated as trustees of the will, and are expressly given the power to dispose of any part of the property when it is for the best interest of the estate to do so. The legacy to the widow was first made a charge on certain real property, and the income from this property failed to pay the legacy. Then it was made a charge upon the partnership property, and the net income from it was not sufficient to pay the legacy. The widow demanded payment out of the body of the estate, and her demand caused actual litigation in respect to matters which were purely of equitable cognizance. It required the intervention of a court of chancery to enforce the trust in favor of the widow under the will, and, as an incident to the exercise of that jurisdiction, the chancery court was required to interpret the will in order to properly enforce the trust. So it will be seen that the performance of the duties of the executors as trustees under the will was directly affected, and this gave jurisdiction to the chancery court.

This brings us to a consideration of the clauses of the will giving a legacy of $5,200 annually, payable quarterly, to Mrs. Sophia Leon Stifft, the widow of the testator. Her rights under the will directly involved the interpretation of items two and six, which are set out in full in our statement of facts, and which need not be repeated here.

Counsel for appellants rely for a reversal of the decree upon the ground that the legacy of Mrs. Stifft was payable solely out of the net income to be derived from the real property designated in item two of the will, or, in event there was a failure or deficiency from that

source, from the net income of the partnership business of the Charles S. Stifft Company. On the other hand, counsel for Mrs. Stifft seek to uphold the decree on the theory that the will gave to Mrs. Stifft a demonstrative legacy, and that, upon the failure to pay the legacy out of the net income of the property upon which it was charged, the legatee will not be deprived of her legacy, but will be permitted to receive it out of the general assets.

The three different kinds of legacies are clearly defined in 3 Pomeroy's Equity Jurisprudence, 4th ed., §§ 1130-1133 inclusive, and in 2 Page on Wills, 2d ed., §§ 1230-1231.

In other words, it is contended that this was a demonstrative legacy, payable out of the net income from certain designated property; but, like a general legacy, it is payable out of the general assets of the estate if the particular fund should fail or there should be a deficiency in it. The authorities bearing upon the question are very numerous, and many illustrative cases on the subject are cited and reviewed in the briefs of counsel for the respective parties. The most important of these cases are collected and reviewed in a case-note in 4 Ann. Cas. 163. No useful purpose could be served by reviewing and distinguishing many of them from the case at bar. An examination of the cases shows that no positive rule applicable to every case can be laid down, but each case must be determined upon a consideration of the material provisions of the will to be construed and the extrinsic circumstances as they probably present themselves to the testator, which may be brought to bear in arriving at his intent. The authorities seem to be clear in holding that whether a legacy is to be treated as a demonstrative legacy or as one dependent upon a particular fund, is a question of construction to be determined according to what may appear to have been the general intention of the testator. Where the language of a will is clear and unambiguous, all the courts hold that the will must be

construed so as to ascertain the intention of the testator, and, when that is done, his intention must be carried out. So each case must depend upon the meaning of the language used by the testator in his will.

From these cardinal rules it seems clear that, when an annuity is given out of the net income of certain designated property, and such income turns out to be insufficient for full payment, the deficiency cannot be made up from the *corpus* of the estate.

On the other hand, if the will itself provides for the payment of the deficiency from the body of a certain designated part of the estate, that shows a clear intention on the part of the testator that the legacy is not to be paid out of the general assets of the estate.

In the application of these well-settled rules to the case at bar, the terms of the will of Charles S. Stifft must be examined in the light of the circumstances surrounding him at the time he executed the will. The primary rule of construction in the interpretation of a will is to ascertain the intention of the testator according to the meaning of the words he had used, deduced from a consideration of the whole will and a comparison of its various clauses in the light of the situation and circumstances which surrounded the testator when the instrument was executed. *Wooldridge* v. *Gilman,* 170 Ark. 163, 279 S. W. 20.

When this is done, we perceive no difficulty in arriving at the intention of the testator. He was a successful business man, and in partnership with some of his children by a deceased wife, when he desired to marry again. He entered into an antenuptial contract with the woman he intended to marry. He promised to give her certain personal property and also to provide an annuity of $5,200 per year for her, in case she outlived him, and to make the payment of it a charge upon the income of certain designated property. After his marriage, he executed the will which we are asked to interpret. Under item two of the will, he devises certain business prop-

erty in the city of Little Rock to his executors in trust
with directions to apply $5,200 of the net income quarterly
to Sophia Leon Stifft, pursuant to and for the purpose
of carrying into effect an antenuptial agreement entered
into between said parties on January 22, 1921. Item six
provides that it is the intention of the testator that the
provisions in item two directing that $5,200 of the net
income of a certain designated apartment house shall
be paid in quarterly installments of $1,300 to Sophia Leon
Stifft. It further provides that, if the net income from
said property should not be sufficient to pay his wife
said sum of $5,200 per year or to meet any one of said
quarterly installments of $1,300, said deficiency shall be
made out of the net earnings of the Charles S. Stifft
Company. It further provides this shall be a first charge
on said net earnings, and, if said earnings are not suffi-
cient to meet said charge, or if said business be discon-
tinued, such deficiency shall become a first charge upon
all the property and assets of said Charles S. Stifft.

Continuing, the clause reads: "And, if necessary,
that a sufficient amount of the assets of said company
be set apart and invested by my trustee to secure a suffi-
cient sum out of which to discharge any such deficiency
or deficiencies, the amount of the fund so necessary to
be set apart and invested for such purpose and the neces-
sity for setting the same apart to be determined by my
said trustee, and my said trustee's determination as to
the setting apart of such a fund from said business and
the amount thereof to be final, conclusive and binding on
all the beneficiaries of my will."

Item seven gives the residue of his property to his
children.

We think it is plain that it was the intention of the
testator, from the language used, that he only intended
that any failure or deficiency in the payment of the
legacy to his wife, after the failure of the particular
fund, should be made up out of the *corpus* of the prop-
erty of the Charles S. Stifft Company, a firm of which the

testator was a member, and not out of the general assets of his estate.

In other words, it is our opinion that the quarterly payments of the $5,200 annuity should be paid, first, out of the net income of the designated apartment house; and, if that income should not be sufficient, then out of the net earnings of the Charles S. Stifft Company; and, if the net income from both of these sources should not be sufficient, the deficiency shall be paid out of the interest of the testator in the *corpus* of the property of the Charles S. Stifft Company, which, under the terms of the sale of the executors, amounts to $32,500.

The result of our views is that the decree of the chancery court should be modified, and, to that end, the decree will be reversed, and the cause remanded with directions to enter a decree in accordance with this opinion. The costs will be paid by the executors out of the general assets of the estate.