MITCHELL *v.* MITCHELL.

4-7589                                              187 S. W. 2d 163

Opinion delivered April 9, 1945.

*J. M. Smallwood,* for appellant.

*Owens, Ehrman & McHaney,* for appellee.

GRIFFIN SMITH, Chief Justice. The appeal questions a decree construing the will of E. E. Mitchell, who died January 25, 1942.

All of the testator's children were sons: Emmett, William, Shelby and James.

The will, executed June 24, 1937, contains eighteen items. As to some of the property a trust was created, to be administered by William, Shelby, and D. O. Horton, Jr., executors without bond.

By *Item III* each son was given $25, to be paid within six months.

E. E. Mitchell Company was a corporation engaged in the hardware and furniture business at Morrilton. It had been actively managed by William Mitchell and his son, William Junior. The charter was surrendered and dissolution effectuated December 31, 1938—approximately eighteen months after the will was written, and more than three years before the testator died. However, the business continued.

*Item IV:* "I . . . bequeath all my stock and interest in E. E. Mitchell Company . . . to my son, William M. Mitchell, and to his son, William Mitchell, Jr., two-thirds of same to my said son . . . and one-third to his son, . . . as and for their absolute property."

This, say appellants Emmett, James, and Shelby Mitchell, being a specific bequest, and the subject matter having been evidenced by corporation stock subsequently cancelled, the legacy lapsed—or, as is sometimes said, there was an ademption.

The decedent owned valuable farm lands in Conway County and elsewhere. Contention, other than that relating to *Item IV,* is that if the will be correctly construed a fee simple title vests in the four devisees with expiration

of the trust period. *Items* XVI, XVII, and XVIII are copied in the margin.[1]

On the first proposition (*Item IV*) the Court declared the law to be that where a specific bequest is made, the subject matter must exist when the testator dies. If, said the Court, the particular item or thing sought to be given is wholly lost, destroyed, or has been disposed of during the testator's lifetime, or if the form be so changed as to defeat the giver's purpose, then the designated legatee cannot prevail. So, reasoned the Chancellor, had Mitchell bequeathed only the corporation stock as it existed when the will was executed, "then the construction would be simple." Attention is then called to the language whereby ". . . all of my stock and interest" in the business was sought to be given. The added words, "and interest," thought the Chancel-

---

[1] *Item 16.* It is my will that none of the property of my estate shall vest in my children or their descendants until the expiration of this trust except payments and distributions as set out in Item 12 herein; and should any of my children or their descendants attempt to sell, convey or in any wise alienate his or her expectancy in my estate, the one so attempting shall never share therein but shall be forever barred and disinherited; and it is my will and intention that the annual portions herein directed to be paid to my children or to their descendants shall not be, nor considered as a vested interest or estate in such property or distribution until same shall be actually paid and delivered to them and in the event any of said children or their descendants shall attempt to sell or dispose of or in any manner alienate his or her expectancy in any such yearly distribution before same is actually paid and delivered he or she shall not have any share in said distribution for said year and same shall be given to the other children or their descendants equally;

*Item 17.* With further reference to the lands reserved herein from sale as set out in Item 11 herein, there is a debt against these lands, and it is my desire that my said trustees shall pay said debts as the installments come due from time to time.

*Item 18.* At the expiration of ten years being the expiration of the trust period herein, the trust herein shall cease and I will that all my property of every kind, real, personal or mixed and wherever located and then belonging to my estate shall vest in my children herein named, who may at the time be living and who shall not have attempted to dispose of or alienate their expectancy in said estate, for and during their natural lives and at their death to go to their bodily heirs; and to and in the legal bodily issue of any who shall have died, each taking in the same proportion as he or she would take had I lived until the time and died intestate. And I will that the personal property be delivered to the said children or their descendants, and that my said trustees make deeds to my said children or their descendants deeding to them jointly all the lands herein reserved together with any other lands which may remain unsold at the time, it being my will that said children share equally in the personal property and real estate remaining in the hands of my said trustees at the termination of this trust.

lor, clearly disclosed an intent by the testator to bestow the property upon his son and grandson, irrespective of its physical form when the will became effective, provided identity could be made definite and there was no overlapping of interests others might rightfully contend for.

Parol testimony was admitted in explanation of the testator's situation. It is shown that he remarked to a principal creditor that the hardware and furniture business was in good hands and would be continued. The Court found, in effect, that it was not E. E. Mitchell's purpose, when as an officer of the corporation he participated in its dissolution, to end operations or to materially alter the course of affairs other than to change from corporate entity to personal ownership.

The will by clear statements discloses an intent that the business should not be disturbed; for by *Item V* William M. Mitchell was given the building, "in which the above-named corporation is conducting business, together with lands on which same is situated, . . . for and during his natural life, and at his death, same to go to his bodily heirs and to their heirs, administrators and assigns forever." The testator's home was also given to William, (*Item VI*) ". . . for and during his natural life and at his death to his bodily heirs and to their heirs, administrators and assigns forever." There was direction that William discharge "whatever may be unpaid on the mortgage debt against said [residence] and store building at the time of my decease."

In a letter to his four sons April 12, 1937—more than two months before execution of the will—the father mentioned discord between them, misconduct by some, his inability at that time to make financial contributions as had been his former practice, and the necessity, on account of debt, to rearrange his affairs and in a measure alter his mode of life.[2] There was a warning that unhappy consequences would attend a continuation of the conduct complained of. William, the father wrote, had

[2] The estate, at the time of R. E. Mitchell's death, was worth approximately $100,000.

been of substantial help, and was the only son who had a child. For this reason he had asked William and William Junior to remain in the family home.

Appellants urge applicability of the principle stated in Ruling Case Law, v. 28, p. 346, that a specific legacy of corporation stock is adeemed if the testator sells and invests the proceeds in other stock, or where, after execution of the will, a testator exchanges the identified stock for shares in a corporation which succeeds to the rights, duties, and property of the first corporation, or where the charter of the corporation whose stock has been bequeathed expires during the lifetime of the testator and he receives dividends in liquidation of the stock.

We do not think the cases upon which this rule rests support the result that would follow if they were applied in the controversy before us as appellants would have them. Here, for all practical purposes, there was no loss of identity, nor was there confusion. When Mitchell wrote his will in 1937 the hardware and furniture store was operated as such, with a known identity and a recognized course of business. Its capital structure had been invested in merchandise, and its assets were goods, credits, etc. It is of but little consequence in a transaction of this kind that the capital and its increment were evidenced by shares of stock. In whatever form such an investment appeared, physical property or choses in action stood for the stock in respect of the intent of E. E. Mitchell.

A New York case (*Walton* v. *Walton*, 7 Johns. Ch. 258, 11 American Decisions 456) is in point. The opinion was written by Chancellor Kent. A testator had bequeathed all of his rights, interest, and property in the Bank of the United States. With expiration of the Bank's charter its property was transferred to trustees, to be collected and disposed of for the benefit of shareholders. From time to time funds thus received were distributed as dividends, but some property remained with the trustees when the testator died. It was held that there was ademption as to dividends paid to the testator, but not as to the remaining corpus.

Generally speaking, a change in the form of a security bequeathed does not of itself work an ademption. It must be shown that the testator intended to give specific securities of the form or nature mentioned in the will. See Corpus Juris, v. 69, p. 1012, and cases cited in Note 89. See, also, *King* v. *Sellers,* 194 N. C. 533, 140 S. E. 91; *Wiggins* v. *Cheatham,* 143 Tenn. 406, 225 S. W. 1040, 13 A. L. R. 169.

. . . . . .

Whether the will be regarded as one creating a spendthrift trust, or one under which benefits are partially deferred, it is certain that as to Emmett, Shelby, and James Mitchell, the testator did not intend that they should control any of the corpus of the estate until ten years had expired. The restriction is (*Item XVI*) that ". . . none of the property of my estate shall vest in my children or their descendants until the expiration of this trust, except payments and distributions as set out in *Item XII*." Should any such child "or their descendants" attempt in any manner to alienate the expectancy, he would be "forever barred and disinherited." Any effort to dispose of income before the annual distributive period was penalized by forfeiture for the year in question. Such portions were declared not to be vested interests.

Appellants argue that because the designated sons did not have an estate—title being in the trustees—and because they were not active participants in the trust, the obvious attempt was to limit an estate after a grant in fee, "the validity of which is very doubtful."

During the ten-year period title to all the property not otherwise disposed of vests in the executors in trust. With termination of the trust, ". . . all my property, . . . real, personal, or mixed, and wherever located and then belonging to my estate, shall vest in my children herein named . . . for and during their natural lives, and at their death to go to their bodily heirs; and to and in the legal bodily issue of any who shall have died, each taking in the same proportion as he or

she would take had I lived until the time and died intestate.''

If the paragraph had ended here one seeking for ambiguity could not have complained that there was want of clarity, directness and finality. But it did not so close; for there was added, ''And I will that the personal property be delivered to the said children or their descendants, and that my said trustees make deeds to my said children or their descendants, deeding to them jointly all lands reserved, together with other lands which may remain unsold at the time, it being my will that the children share equally in the personal property and real estate remaining in the hands of my said trustees at the termination of this trust.''

It will be observed that *Item XVIII* first vests in the children for life all of the property, ''real, personalty or mixed.'' The testator then enlarges the gift as to personalty by directing that it be *delivered* to beneficiaries ''or their descendants.'' Available lands are to be *deeded* to the children *jointly,* or to their descendants.

While the testator, as is frequently the case when an attempt is made to clarify by modification, ventured somewhat from the security of conciseness, (and certainly, as to the personal property, contradicted in the second sentence what had previously been said) his intent regarding the realty, as disclosed by the entire will, was that it should be kept in his own blood line: first, to the four children for life, as was unmistakably expressed, then ''to their bodily heirs, and to the legal bodily issue of any who shall have died.'' It is quite true that the words, ''my children and their descendants'' were sometimes used, but the children had been identified as the four sons, or if one or more should die, then those living when the trust period expired; and while the expression ''children and their descendants'' would be ineffective to create an estate tail, the objection is overcome when, in the item or paragraph directing final disposition, the grant is to the children the testator had previously identified, ''and to their bodily heirs.''

Appellants find assurance in *Hardage* v. *Stroop,* 58 Ark. 303, 24 S. W. 490. A deed was construed, the habendum clause being: "To have and to hold the said land unto the said Tennessee M. Carroll for and during her natural life, and then to the heirs of her body in fee simple; and if, at her death, there are no heirs of her body to take the said land, then, in that case, to be divided and distributed according to the laws for descent and distribution in this State."

In holding that Mrs. Carroll was invested with an estate of inheritance the Court said: ". . . What estate a deed to land conveys is determined by the intent of the parties, as ascertained from the contents of the deed and the power of the grantor to convey. When construed in this manner, it is obvious that the intention of the deed in question was to convey the land in controversy to Mrs. Carroll for life, then to her lineal heirs, and, in default thereof, to her collateral heirs; in other words, to Mrs. Carroll for life, and, after her decease, to her heirs. The intention that the heirs were to take only in the capacity of heirs is manifest. The deed comes within the Rule of Shelley's Case."

In an opinion written for the Court by Mr. Justice WOOD (*Wilmans* v. *Robinson,* 67 Ark. 517, 55 S. W. 950) it was held that a deed ". . . to Martha Ann Arundell, and her bodily heirs" gave to the first taker a life estate, with remainder in fee to the bodily heirs. In that case *Hardage* v. *Stroop* was urged as authority for the contention that Martha Ann took the fee; but in answer Judge WOOD pointed to a finding by the Court in the Hardage-Stroop case that it was intended that the heirs were to take only in the capacity of heirs. "In this case," said Judge WOOD, "the limitation is 'to her bodily heirs,' creating an estate tail in the grantee, [while in the cited case] the effect of the clause was to create a limitation to [the] heirs in general."

Our conclusion is that in the case at bar an estate tail was created; and this, being a life estate, (Pope's Digest, § 1799) passes the fee to the bodily heirs of the life

tenants by operation of the will and not by descent. Not so as to the personal property, which vests with delivery.

Affirmed.