MEE *v.* CUSINEAU, EXECUTRIX.

4-8468                                                    209 S. W. 2d 445

Opinion delivered March 15, 1948.

Rehearing denied April 12, 1948.

62

*Wootton, Land & Matthews* and *James L. Byrd,* for appellant.

*Mallory & Rasmussen,* for appellee.

SMITH, J. Bertha J. Busch died testate December 5, 1946, and her will, dated June 11, 1945, was duly probated. The executrix named in the will duly qualified, and this litigation arose over the disbursement of the assets which she had reported in her inventory.

The will consisted of 10 paragraphs. The first of these directed the payment of her debts, and the second gave directions as to her funeral. The third and fourth paragraphs made bequests of $100 to each of two persons named. The fifth paragraph reads as follows:

"I hereby give, bequeath and devise to my niece, Bertha Kirchgraber Cusineau, of Hot Springs, Arkansas, all of my personal property of whatever kind and character, including household and kitchen furniture, wearing apparel and jewelry, and all moneys of which I may die seized and possessed, excepting, however, the specific bequests hereinbefore made."

The sixth paragraph named Bertha Kirchgraber Cusineau, her niece, as executrix, and the seventh paragraph devised to this niece "all of the lots owned by me, or in which I have an equity or interest at the time of my death in the Busch Park Addition, . . . ."

The eighth paragraph reads: "I give, devise and bequeath the real estate owned by me, or in which I have an equity or interest at the time of my death, known as the 'McClendon Springs Property' (which is described) to the following parties and persons and in the following proportions, to-wit:" (a) One-fourth to St. John's Catholic Church, (b) one-eighth to the Sisters of St.

John's Place, (c) one-eighth to the Good Shepherd's Convent, (d) one-fourth to Ada Busch Harrison, a niece, (e) one-fourth to Mrs. Mary Louise Busch Mee, the legally adopted daughter of the testatrix deceased sister.

Paragraph nine devises small sums of money to numerous persons and concludes with this statement: "It being my intention to except in this instance Bertha Kirchgraber Cusineau for whom I have made separate provision in this will."

Paragraph 10 contained provisions designed to circumvent a contest of the will, which has not been contested as this litigation involves not its validity, but its construction. When all of these paragraphs are read together, the entire estate is disposed of.

The McClendon Springs property was a 230-acre tract of land about five miles east of the City of Hot Springs, on which there were a number of springs, the water from which had been sold over a long period of time. Miss Busch had constructed a few houses on the property, which she rented to visitors and in one of which she resided with her niece, Miss Cusineau, who had lived with Miss Busch for a period of 17 years before the execution of the will. Miss Busch owned another tract of land which she had sub-divided into blocks and lots, which she sold under contracts providing that when the last payment of purchase money had been made, deeds would be executed to the purchaser. Some of these contracts had been fully paid, and deeds made prior to Miss Busch's death, and there are a number of contracts on which payments are still being made. This litigation does not involve those lots.

On January 14, 1942, Miss Busch entered into a contract with one Gecks for the rental, with the option to purchase, the McClendon Springs property, which eventuated in the litigation reported in the case of *Busch v. Gecks*, 209 Ark. 431, 190 S. W. 2d 625. This contract was rescinded on June 19, 1946, and on the same day Miss Busch conveyed the property to Rayow, Young and Colish by warranty deed, reserving for herself a life estate in one acre of the land on which she had a home.

The consideration for this deed was the sum of $21,190, evidenced by notes for that amount for the security of which the grantees executed to Miss Busch a mortgage on the land.

On the same day the grantees executed two warranty deeds, by one of which they conveyed 20 acres of the land, and 50 acres by the other, and on the same day Miss Busch executed releases of these two tracts of land from the mortgage.

The court found on the hearing of the exceptions to the settlement of the executrix, that by these conveyances executed subsequent to the date of. the will there had been an ademption of the devises of the McClendon Springs property, and that the unpaid purchase money notes became the property of Miss Cusineau under paragraph five of the will.

At § 341, 28 R. C. L. 345, appears statements of the law to the following effect. The distinctive characteristic of a specific legacy is its liability to ademption. If the identical thing bequeathed is not in existence, or has been disposed of so that it does not form a part of the testator's estate, at the time of his death, the legacy is extinguished or adeemed, and the legatee's rights are gone. The rule is universal that in order to make a specific legacy effective the property bequeathed must be in existence and owned by the testator at the time of his death, and the nonexistence of property at the time of the death of a testator which has been specifically bequeathed by will is the familiar and almost typical form of ademption. Many cases supporting this text are found in the annotation to the case of *Eddington* v. *Turner*, 38 Atl. 2d 738, 155 A. L. R. 562; *Brady* v. *Paine*, 391 Ill. 596, 63 N. E. 2d 721, 162 A. L. R. 138.

In the body of the opinion last cited it was held that a disposition by testator in his life time, of property specifically devised operates as a revocation of the devise; and a conveyance of a part of such property operates as an ademption of the devise to the extent of the lands conveyed.

The reason for this rule as stated in the numerous cases cited in the note to § 543, 68, C. J. 844, is that as the testator no longer owns the property specifically devised, there is no property for the devisee to take, and also that subsequent conveyance of the property by the testator after having made a specific devise of it indicates conclusively a change of testimentary intent as to that property.

None of the appellants claim any interest in the fifty-acre tract, nor in the twenty-acre tract above referred to, for the obvious reason that Miss Busch did not own that land at the time of her death, having conveyed it away by warranty deed in her life time. But she also has conveyed away the remainder of the McClendon Springs property by warranty deed, and there would appear to be but little doubt that the court was correct in holding that the devise of the McClendon Springs property was adeemed, but for the recital in the eighth paragraph that ''I give, devise and bequeath the real estate owned by me, or in which I have an equity or interest at the time of my death, known as the 'McClendon Springs property' etc.''

The decision of the question involved on this appeal is what effect should be given to the language just quoted. Obviously it appears from what has been said that if Miss Busch had devised the property itself and nothing more had been said, there would have been an ademption when she sold the property. But as appears from the opinion in the case of *Busch* v. *Gecks, supra,* there was an outstanding contract at the time of the execution of the will under which Miss Busch had leased the property under a contract which gave an option to purchase within a possible period of five years or more. That contract was dated January, 1942, and the will was executed June 11, 1945.

It is certain that the will was executed in contemplation of the fact that the lessee might exercise his option to buy and was given five years in which to do so. This contract was rescinded June 18, 1946, and the land was sold to other parties for the consideration of $21,190

evidenced by the notes which form the subject matter of this litigation, the payment of which was secured by a mortgage on the property sold. The result of this transaction is that while Miss Busch ceased to be the owner of the property, she retained and had a very substantial interest in it, and that interest is defined in the purchase money notes. This is the very situation which Miss Busch must have contemplated after she had executed a contract involving the possible sale of the property. When the will was executed Miss Busch did not have merely "equity or interest" in the property, but she had the title thereto. Contemplating the sale which she was then under contract to make, and which was later made, she devised the property or the equity or interest she might own at the time of her death to the beneficiaries named. She did not define that equity or interest, but she devised it, whatever it might be.

If it be said the deed from Miss Busch vested the "equity," that of redemption, in her mortgagor it may be answered that she devised not only her equity but her "interest" as well.

It is unnecessary to consider these distinctions. In the case of *Ormsby* v. *Ottman,* 85 Fed. Rep. 492, Judge Sanborn said: "On the other hand, the word 'interest' is the broadest term applicable to claims in or upon real estate. In its ordinary signification among men of all classes it is broad enough to include any right, title, or estate in, or lien upon, real estate. One who holds a mortgage upon a piece of land for half its value is commonly and truthfully said to be interested, to have an interest, in it, and it would not be true, in the common understanding of men, to say that he had no interest in it." However designated Miss Busch had a very substantial interest in this property at the time of her death, and that interest was devised to the named beneficiaries, the appellants here.

In the chapter on Ademption, Vol. 2, Page on Wills, § 1336 it is said: "If the terms of the will show that testator contemplates some change in the form of the gift, or even a sale and reinvestment of the proceeds, and

that he intends to pass the proceeds, or the property in which the proceeds are reinvested, to the original beneficiary, full effect will be given to such provision. . . . If testator gives the 'proceeds' of certain property, and it appears, from the terms of the will, that he gives such proceeds even if the property is sold in his life time, the beneficiary may have the proceeds as far as they can be traced."

The interest of Miss Busch in the property at the time of her death is readily traceable in the notes given for the purchase price thereof, and we conclude therefore that there was no ademption as to the unpaid purchase price.

In the case of *Mitchell* v. *Mitchell*, 208 Ark. 478, 187 S. W. 2d 163, the facts were that the E. E. Mitchell Co. was a corporation largely owned by E. E. Mitchell, who by his will devised "all my stock and interest in E. E. Mitchell Co." to a son and grandson. He had other children to whom he devised other property. After the execution of the will the corporation surrendered its charter and the business thereafter was continued as a partnership. In the settlement of the testator's estate it was contended that the devise of the stock had been adeemed, but the court held against that contention, and this action was affirmed on the appeal to this court. We there said: "Generally speaking, a change in the form of a security bequeathed does not of itself work an ademption. It must be shown that the testator intended to give specific securities of the form or nature mentioned in the will."

We there cited the case of *Walton* v. *Walton*, 7 Johns. Ch. 258, 11 Am. Dec. 456, where the facts were that a testator had bequeathed all his rights, interest, and property in the Bank of the United States. With the expiration of the Bank's charter its property was transferred to trustees, to be collected and disposed of for the benefit of shareholders. From time to time funds thus received were distributed as dividends, but some property remained with the trustees when the testator died. It was held in the case cited that there was an ademption as to dividends paid to the testator, but not as to the remain-

ing corpus. So here there was an ademption as to the fifty-acre and the twenty-acre tracts of land, and as to any of the purchase money Miss Busch may have collected, but not as to the purchase money remaining unpaid at the time of her death.

The decree of the court below will, therefore, be reversed and the cause will be remanded for further proceedings not inconsistent with this opinion.