Toney *v.* Toney.

4-9292

236 S. W. 2d 716

Opinion delivered February 26, 1951.

*David Solomon, Jr.,* for appellant.

*D. S. Heslep,* for appellee.

GRIFFIN SMITH, Chief Justice. A plantation known as the McGehee Place was devised to six heirs in equal shares. One of the beneficiaries was McKenzie Toney, ["whose] interest is to be entailed on his three children," naming them. The question is whether the father took a fee, as the Chancellor held, or only a life estate. The parent had acquired the remaining five-sixths.

Appellee cites some of our cases holding that the law favors early vesting of estates. So, where a will is susceptible of a dual construction, *Doake* v. *Taylor,* 195 Ark. 490, 112 S. W. 2d 958, and under one the estate becomes vested, but the other would create a contingent remainder, a meaning resulting in expeditious investiture will be adopted if that result can be reached without doing violence to the testator's words. The public policy upon which this rule is based has been frequently discussed.

We are cited to our earlier cases construing wills and deeds where the grant or devise by its terms was absolute, but an attempt had been made by subsequent language to restrict or create exceptions. The subject was discussed in *Mason* v. *Jackson,* 194 Ark. 236, 106 S. W. 2d 110, 111 A. L. R. 1071, where an attempt was made to reserve a half interest in minerals. Mr. Justice BUTLER, who wrote the Mason-Jackson opinion, said [in discussing deeds] that if there is a clear repugnance in the nature of the estate granted and that limited in the *habendum,* "the latter yields to the former."

In *Beasley* v. *Shinn,* 201 Ark. 31, 144 S. W. 2d 710, 131 A. L. R. 1234, the grantors executed and the grantees accepted a deed containing this provision: "It is expressly agreed and understood by the parties that one-half of the mineral rights in and under said land has been retained by a former grantor." This language was in a clause following a grant, but preceding the *habendum.* The reservation contradicted the grant. In giving effect to the intentions of the parties the opinion written by Mr. Justice BUTLER was discussed. It was then said: "To the extent that this opinion conflicts with *Mason* v. *Jack-*

*son* . . . and other cases involving mineral reservations, they are overruled.''

While the Beasley-Shinn case was expressly limited to mineral reservations, the scope was later broadened, *Carter Oil Company* v. *Weil,* 209 Ark. 653, 192 S. W. 2d 215. The opinion was written by Mr. Justice FRANK G. SMITH in a comprehensive review. The result reached in the controversy then before the court was held to be a rule of construction as distinguished from a rule of property. A dissenting opinion was written by Mr. Justice ROBINS who in urging that the majority construction should at least have a prospective application said that he had no quarrel with the result in *Beasley* v. *Shinn.* On the contrary it was Judge ROBINS' view that the facts there justified reformation of the deed.

The foregoing cases are mentioned because appellee relies upon decisions in which strictness was observed. *Moody* v. *Walker,* 3 Ark. 147.

We must next consider what the testator meant when she said, ''I will to my six heirs each a sixth interest in the McGehee place, [but] . . . McKenzie Toney's sixth interest is to be entailed on his three children.''

By statute a fee tail becomes a life estate in the first taker with remainder ''in fee simple absolute'' to the person to whom the estate tail would first pass according to the course of the common law. Ark. Stat's § 50-405; *Mitchell* v. *Mitchell,* 208 Ark. 478, 187 S. W. 2d 163.

In the case at bar phraseology suggests a probability that the will was written by the testator after consultation with an attorney, or that an attorney prepared it in accordance with the testator's directions. The wording is unusual in that the purpose to limit the first estate is sought to be effectuated by *entailing Toney McKenzie's interest on the three named children.*

In Jarman on Wills, (seventh edition, by Sanger) vol. 2, pp. 880-81, it is said that if real or personal property is directed to be entailed on A and his heirs, ''it

seems that A only takes a life interest, with remainder to his heirs in tail or absolutely, according to the nature of the property." A definition sometimes quoted with approval is to be found in *Stearns* v. *Curry*, 306 Ill. 94, 137 N. E. 471. After saying that a suggested interpretation took no account of the words "by entail," the opinion contains this observation: " 'Entail' as a noun means 'a fee abridged' or limited to the issue or certain classes of issue instead of descending to all the heirs. . . . In wills, however, technical words are unnecessary, and any words which indicate an intention to create an estate which shall pass to the lineal descendants of the grantee are sufficient."

Of course an express grant in fee will not be reduced to a life estate by mere implication arising from a subsequent gift over, *Mansfield* v. *Shelton*, 67 Conn. 390, 35 A. 271, 52 Am. St. Rep. 285, and cases commented on in 27 LRA (NS) 1047. Any subsequent language of an appropriate nature clearly indicating the testator's purpose to limit the devise to the first taker and definitely disclosing the individuals or class selected in succession is sufficient if in other respects there is no trespass upon statutory treatment.

The word "entailed" would have but little if any meaning if we should hold that the senior McKenzie acquired a fee simple estate.

Reversed, with directions to dismiss the action, a proceeding which sought to remove a cloud from appellee's title.