E. Nell KIDD, Executrix *v.* Beulah P. SPARKS

81-244                                    633 S.W.2d 13

Supreme Court of Arkansas
Opinion delivered May 10, 1982
[Rehearing denied June 7, 1982.*]

*DUDLEY and HAYS, JJ., would grant rehearing.

*Boyce R. Davis,* for appellant.

*John C. Everett* of *Everett & Whitlock,* for appellee.

JOHN I. PURTLE, Justice. This case involves the interpretation of a will which the testator prepared by filling in blank lines on a commercially printed will kit form. Use of such a device is at best risky, as even the most skilled probate attorney would have difficulty with the unsuitable and inept printed provisions in this will kit. The provision to be construed is set out below, with the capitalized printing of this opinion representing the portion of the will which was typed by the testator and the regular printing of this opinion representing that part of the will which was commercially printed.

I hereby give, bequeath and devise unto BEULAH SPARKS, MY WIFE ALL OUR PERSONAL BELONGINGS EXCEPT THE RESTRICTIONS BELOW.

all of my estate and property, both real and personal, of which I may die seized and possessed, wherever the same may be located or situated and of whatsoever kind or character. However, it is my desire and I hereby, direct that the following restrictions, stipulations and divisions shall be and is, a part of this, my last will and testament.

TO BOB SPARKS, MY SON ALL MY TOOLS.
TO BOB SPARKS, MY SON AND PATSY K. KIRK, MY DAUGHTER THE PROCEEDS FROM TWO REAL ESTATE ESCROW ACCOUNTS.

(ESCROW BETWEEN HENRY A. GARDNER III AND M. L. SPARKS, 10 ACRES, SEC. 19 TOWNSHIP 15 NORTH RANGE 32 WEST. PAYMENT OF $200.00 PER MONTH.
(ESCROW BETWEEN DAVID WALTON AND M. L. SPARKS. HOUSE LOCATED AT 301 EAST NORTH. PAYMENT OF $201.71 PER MONTH.)

At the time of execution of the will, the Bank of Lincoln held in escrow a promissory note, secured by a mortgage, payable to the decedent, made by Henry A. Gardner III and Linda Gardner. Approximately nine months before the testator's death this note was paid in full, by a lump sum prepayment, with the final payment being made by cashier's check in the amount of $12,405.65. With the cashier's check and his personal check in the amount of $2,594.35 the decedent purchased a $15,000 certificate of deposit in the Bank of Lincoln.

At the time of the execution of the will the Bank of Lincoln held in escrow a second promissory note and mortgage, payable to the decedent at the rate of $202.71 per month, made by David Walton and Phyllis Walton. At the date of death, $18,762.30 of principal and interest to maturity remained due.

The trial court held that the will should be construed as devising to Beulah Sparks all of the decedent's personal property except his tools and the $18,762.30 proceeds remaining due under the Walton note. The trial court held that the term "proceeds" included the balance of principal and interest payable. The Gardner note was held to be adeemed by extinction, with the result of the ademption being to pass all residuary property to Beulah Sparks, the surviving spouse, under the above-quoted language from the printed form. We affirm.

The first issue is whether the legacies to be paid from two real estate escrow accounts were adeemed. This turns on the additional question: were the legacies specific or demonstrative?

A specific legacy is the bequest of a particular thing, as distinguished from all others of the same or similar kind, and must be satisfied only by the delivery of the particular thing. *Holcomb* v. *Mullin,* 167 Ark. 622, 268 S.W. 32 (1925). A demonstrative legacy is one stated by designation only, such as a certain interest or fund from which the bequest of money, or amount of value, shall be primarily paid or satisfied. *Stifft* v. *W. B. Worthen Co.,* 177 Ark. 204, 65 S.W.2d

527 (1928). In the present case the decedent made specific legacies to his children. They were to receive the "proceeds from two real estate escrow accounts," which the testator described as being payable in installments of so much a month. Each indebtedness was described sufficiently to make them clearly specific legacies, in that anyone could understand the bequest to the children. Thus, when one of the accounts was prepaid in full, that account was no longer within the testator's description of the legacy. The will did not refer to two real estate escrow accounts, "or their proceeds," which could have been construed as an alternative reference.

A similar situation to the one under consideration existed in *Mee v. Cusineau, Executrix*, 213 Ark. 61, 209 S.W.2d 445 (1948). There the will stated that the testator left to a certain legatee "all of the lots owned by me, or in which I may have an equity or interest at the time of my death in the Busch Park Addition ... " To another legatee: "I give, devise and bequeath the real estate owned by me, or in which I have an equity or interest at the time of my death, known as the 'McClendon Springs Property' . . . " A part of the last-mentioned property had been subdivided into lots which the testator had sold to various individuals prior to her death. As the lots were paid for a deed was given by the testator. At the time of her demise some of the lots had been paid out and deeds executed while others were still being paid on at the time of her death. Other portions of the McClendon Springs property, totaling 320 acres, were sold by warranty deed, which purchase was on credit, executed by promissory notes secured by a mortgage in favor of the testator. The testator released two tracts of 50 and 20 acres each from the mortgage which were conveyed by the purchaser on the same day. In our opinion in the *Mee* case we quoted with approval language from 28 R.C.L. which states:

> The rule is universal that in order to make a specific legacy effective the property bequeathed must be in existence and owned by the testator at the time of his death, and the nonexistence of property at the time of the death of a testator which has been specifically

bequeathed by will is the familiar and almost typical form of ademption.

We also held that:

> . . . a disposition by testator in his life time, of property specifically devised operates as a revocation of the devise; and a conveyance of a part of such property operates as an ademption of the devise to the extent of the lands conveyed.

And in summing up, we said:

> So here there was an ademption as to the fifty-acre and the twenty-acre tracts of land, and as to any of the purchase money Miss Busch may have collected, but not as to the purchase money remaining unpaid at the time of her death.

The ruling of the trial judge was exactly in accord with the foregoing language. It is a fact that the testator no longer had an interest in the Gardner tract because it had been collected prior to his death. There were no proceeds to be collected from the Gardner sale at the time of the testator's death. He had received the money and converted it into other forms of property.

Common logic says that the Gardner note had been adeemed prior to the testator's death. Obviously, the testator could have placed his childrens' names on the CD if he had wanted them to receive it. The trial court seems to have looked to the intent of the testator in making its ruling. Absent obvious error we will not reverse the trial court in its holding. The paramount aim in the construction of a will is to determine and give effect to the testator's intention. We hold the Gardner property was adeemed in accordance with the reasoning and holding in *Mee* v. *Cusineau*, supra.

As to the residuary clause, the appellant contends that the trial court erred in construing the language on this printed form as containing one. The trial court was correct in looking to rules of construction, for when the testator's

intent is in doubt the court should resort to rules of construction and presumptions. *Hoyle* v. *Baddour,* 193 Ark. 233, 98 S.W.2d 959 (1936). One of these presumptions is that a person who takes the time and effort to make a will does not desire partial intestacy. *Brunk* v. *Merchants National Bank,* 217 Ark. 499, 230 S.W.2d 932 (1950). If at all possible, we will broaden or enlarge a residuary clause to avoid partial intestacy. *Galloway* v. *Darby,* 105 Ark. 558, 151 S.W. 1014 (1912). The language "I hereby give, bequeath and devise unto Beulah Sparks, my wife all our personal belongings except . . . " coupled with "all of my estate and property, both real and personal of which I may die seized and possessed, wherever same may be located or situated and of whatsoever kind or character" is sufficient to leave the residue of the estate to the surviving spouse, especially when any other construction would result in partial intestacy.

Affirmed.

HOLT, DUDLEY and HAYS, JJ., dissent.

ROBERT H. DUDLEY, Justice, dissenting. I dissent from that part of the majority opinion which holds that gifts of *"the proceeds* from two real estate escrow accounts" created specific, rather than demonstrative, legacies.

In determining whether a legacy is specific or demonstrative many courts have recognized a distinction between gifts of specific property and gifts of the proceeds of specific property. Note: "Wills — Ademption: Bequest of Proceeds of Specific Property," 5 Vand. L. Rev. 125 (1951). While our cases have not clearly set out this distinction it seems to have been followed and we have traditionally opted for the better view which is not to apply the doctrine of ademption *to a gift of the proceeds where the fund can be traced and identified in a subsequently purchased security.* This reluctance to extend the doctrine of ademption to a demonstrative legacy of "proceeds" where the funds can be traced and identified is more likely to effectuate the testator's intention. See *Mee* v. *Cusineau,* 213 Ark. 61, 209 S.W.2d 445 (1948); *Mitchell* v. *Mitchell,* 208 Ark. 478, 187 S.W.2d 163 (1945), and 5 Vand. L. Rev., supra.

If the testator had made a bequest of a particular item, as distinguished from all others of the same kind, and which could be satisfied only by the delivery of that particular thing there would be a specific legacy. *Holcomb* v. *Mullin,* 167 Ark. 622, 268 S.W. 32 (1925). However, "the proceeds from two real estate accounts" is not a specific legacy. It is a legacy by designation, a demonstrative legacy. A demonstrative legacy is one stated by designation only, such as a certain interest or fund from which the bequest of money, or amount of value, shall be primarily paid or satisfied. *Stifft* v. *W. B. Worthen Co.,* 177 Ark. 204, 65 S.W. 2d 527 (1928). The testator did not bequeath the Gardners' note, as distinguished from all other notes, and which could be satisfied only by delivery of that note. Instead, he bequeathed "the proceeds from two real estate accounts" and the Gardners' note was included within one of the accounts. Thus there was a demonstrative legacy of "the proceeds," not a specific legacy of the Gardners' note. When a testator has given a demonstrative legacy we look to the intention of the testator instead of applying the doctrine of ademption as a matter of law. *Mee* v. *Cusineau,* supra.

The Gardners' note was prepaid in full prior to the date of death of the testator. The proceeds of the earlier regular monthly payments cannot be traced and there was an obvious ademption of the proceeds to that extent, but the proceeds of the final payment can be traced by the cashier's check and identified with absolute certainty as representing $12,405.65 of the $15,000 purchase price of the certificate of deposit. The majority opinion states, "There were no proceeds to be collected from the Gardner sale at the time of the testator's death. He had received the money and converted it into other forms of property." That is exactly the point — the main issue — only the form of security was changed. The form of security was changed from the Gardners' promissory note to the bank's promissory note. In *Mitchell* v. *Mitchell,* supra, we said:

> . . . Generally speaking a change in the form of a security bequeathed does not of itself work an ademption. It must be shown that the testator intended to give

specific securities of the form or nature mentioned in the will . . . [before there is an ademption].

In the same vein, in *Mee* v. *Cusineau,* supra, we said:

> . . . If the terms of the will show that testator contemplates some change in the form of the gift, or even a sale and reinvestment of the proceeds, and that he intended to pass *the proceeds,* or the property in which the proceeds are reinvested, to the original beneficiary, full effect will be given to such provision. *If testator gives the "proceeds" of certain property, and it appears, from the terms of the will, that he gives such proceeds even if the property is sold in his life time, the beneficiary may have the proceeds as far as they can be traced* . . . [Emphasis supplied.]

The testator stated that he intended to devise the proceeds. The greater part, or $12,405.65, of the testator's interest in the certificate of deposit is indelibly traceable to the final payment, or proceeds, of the Gardners' promissory note. The final payment on the note was not commingled with other money in any of the testator's other accounts. He simply took the certified check for final payment in the amount of $12,405.65 and added to it $2,594.35 from his checking account and purchased the $15,000 certificate of deposit. There is only a change in the form of security and there should be no extinction by ademption of that part of the certificate of deposit which $12,405.65 bears to $15,000 or 82.69 percent of the certificate.

The majority opinion is not buttressed by the statement "Obviously, the testator could have placed his children's names on the certificate of deposit if he wanted them to receive it." If the testator was familiar with our prior cases he surely thought his children would receive the demonstrative legacy which he described as "the proceeds from" the accounts. But regardless of whether he was familiar with a demonstrative legacy, if this concept is followed to its ultimate conclusion, the will would have been ineffective to pass even the original promissory notes because "he could have placed his children's names" on all of his property.

This rhetoric amounts to an ademption of the doctrine of wills rather than the application of a doctrine of partial revocation by operation of law.

I would hold that there should be no extinction by ademption as to "the proceeds" bequeathed which can be clearly traced and definitely identified in a subsequently purchased security.

I am authorized to state that Mr. Justice HOLT and Mr. Justice HAYS join in this opinion.