IN THE MATTER OF the ESTATE of Nora MAYBERRY,
Deceased *v.* Helen MAYBERRY

94-256                                                     886 S.W.2d 627

Supreme Court of Arkansas
Opinion delivered November 7, 1994

*William H. McKimm*, for appellant.

*Gunner Delay*, for appellee.

ROBERT L. BROWN, Justice. This appeal is taken by the Estate of Nora Mayberry which urges that the probate court erred in finding that no ademption of Nora Mayberry's specific bequest to her daughter, appellee Helen Mayberry, occurred. At issue here was a bequest of a savings account at "Arkansas Trust Bank" in Hot Springs,[1] held jointly by Nora Mayberry and Helen Mayberry, which was bequeathed so that Helen Mayberry could have free access to the account for her life. The joint savings account was closed by Nora Mayberry prior to her death, and three certificates of deposit were purchased by her in her name at Arkansas Bank & Trust Company with money from that savings account and with her individual funds. We conclude that the original bequest in the will to Helen Mayberry was adeemed, and we reverse the probate court's decision and remand the case.

On January 25, 1982, Nora Mayberry executed her will which contained this pertinent language:

> I give, devise and bequeath to <u>Helen Bernice Mayberry</u> the following: said Helen Bernice Mayberry is to have a life estate in all my real property; she also is to have and enjoy a life estate in all my personal property other than my banking accounts, Certificates of Deposit, and bonds. As for the savings accounts which I presently have at the Bank of Montgomery County and at the Arkansas Trust Bank in Hot Springs, AR, Helen Bernice

---

[1]Both parties concede that this is the bank known as Arkansas Bank and Trust Company in Hot Springs.

Mayberry is to have free access to both of said accounts for any purpose for her life.

After Helen Mayberry's death, the will provided for an additional life estate in the bank savings accounts in Ernestine Donlon Scarlett and then the grant of a remainder interest in the accounts and other personal property to certain individuals following the deaths of the two life tenants.

On October 27, 1986, Nora Mayberry died. Helen Mayberry took the joint savings account at Bank of Montgomery County by right of survivorship. At the time of her death, Nora Mayberry had no savings account at Arkansas Bank & Trust Company, though she owned three certificates of deposit at that bank purchased in her own name. Those C.D.'s and the funds used to purchase them are described as follows:

### Certificate of Deposit No. 23614

This C.D. was purchased on February 20, 1986, for an amount of $15,000. Of that amount, $5,000 came from the joint Arkansas Bank & Trust Company savings account. Of the remaining purchase price, $9,000 came from the sale of Nora Mayberry's Series E government bonds, and an additional $1,000 was derived from a cashiers check in the joint names of Nora and Helen Mayberry. The cashiers check was drawn on the joint savings account at Arkansas Bank & Trust Company. As of March 25, 1992, a new C.D. No. 50370 had been purchased with the funds from C.D. No. 23614 and accrued interest. Its value as of that date was $21,476.18.

### Certificate of Deposit No. 19587

This C.D. was purchased on February 25, 1985, for an amount of $5,000. A prior C.D. in the same face amount had been used to purchase it, and the funds to purchase that C.D. were $2,900 from the Arkansas Bank & Trust Company joint savings account and $2,100 from Nora Mayberry's individual funds. As of March 25, 1992, a new C.D. No. 50371 had been purchased in the amount of $7,587.60, using the face amount of C.D. No. 19587 and its accrued interest.

### Certificate of Deposit No. 19605

This C.D. was purchased on February 28, 1985, for $10,000.

The entire purchase price came from Nora Mayberry's individual funds. As of March 25, 1992, a new C.D. No. 50372 had been purchased in an amount of $15,209.77, using the face value of the prior C.D. and accrued interest.

Following the death of Nora Mayberry, Helen Mayberry moved for possession of the three C.D.'s. After a hearing before the probate court, the court found that an ademption of the specific bequest of the Arkansas Bank & Trust Company savings account had not occurred. The court further found:

> It was the intent of the Decedent to leave these funds to the Petitioner [appellee Helen Mayberry] and the purchase of the Certificates of Deposit constituted only a change in form and not substance.

The court then ordered delivery of the C.D.'s to Helen Mayberry plus accrued interest for her use and enjoyment for life.

■■ The issue that lies at the heart of this appeal is whether an ademption of the specific bequest to Helen Mayberry of the Arkansas Bank & Trust Company savings account occurred, or whether the three C.D.'s which existed at Nora Mayberry's death constituted a mere change in form, as the probate court found. We stated the general law of ademption in the case of *Mee* v. *Cusineau*, 213 Ark. 61, 64, 209 S.W.2d 445, 447 (1948):

> The distinctive characteristic of a specific legacy is its liability to ademption. If the identical thing bequeathed is not in existence, or has been disposed of so that it does not form a part of the testator's estate, at the time of his death, the legacy is extinguished or adeemed, and the legatee's rights are gone. The rule is universal that in order to make a specific legacy effective the property bequeathed must be in existence and owned by the testator at the time of his death, and the nonexistence of property at the time of the death of a testator which has been specifically bequeathed by will is the familiar and almost typical form of ademption.

We further said in that case:

> Generally speaking, a change in the form of a security bequeathed does not of itself work an ademption. It must

be shown that the testator intended to give specific securities of the form or nature mentioned in the will.

*Mee*, 213 Ark. at 67, 209 S.W.2d at 448; *quoting from Mitchell* v. *Mitchell*, 208 Ark. 478, 187 S.W.2d 163 (1945). In both the *Mee* case and the *Mitchell* case we looked not to a mere change in form to decide the issue but rather to the intent of the testator.

In 1964, we reiterated that in considering ademption we should not defeat the "evident intent" of the testatrix. *Worthen Bank & Trust Co.* v. *Green*, 237 Ark. 785, 376 S.W.2d 275 (1964). In Green, the testatrix devised her "home place" at 1311 Izard Street, Little Rock, to a bank, as trustee, for the benefit of two nephews. Following execution of the will, she sold the Izard Street property, bought a house at 2200 Rice Street, and moved into it. We affirmed the probate court and held that an ademption of the specific devise had occurred. The Rice Street property passed under the residuary clause.

The next case of significance which discusses ademption is *Williamson* v. *Merritt*, 257 Ark. 489, 519 S.W.2d 767 (1975). In *Merritt*, we said again that we look to the intent of the testator in ademption matters. We also stated that generally courts look with disfavor on the ademption of a specific legacy. In this case the testatrix had bequeathed her savings and loan account to two grandnephews. She then withdrew $3,000 from that account. In a letter to her savings and loan for the purpose of withdrawing the money, the testatrix stated that the money would be used for her medical expenses. The $3,000 was commingled in a checking account with the testatrix's other funds, a fact this court noted in particular. At the time of the death of the testatrix, more than $3,000 remained in the checking account. We held that the $3,000 withdrawn from the savings account and deposited in her checking account was adeemed and that the checking account passed through the residuary clause.

The Court of Appeals next discussed the ademption question in *Jennings* v. *National Bank of Commerce*, 270 Ark. 735, 606 S.W.2d 130 (1980). There, the testatrix made a specific bequest of her interest in Lester Land Company, Inc. to Medora Jennings. This interest was sold during the testatrix's lifetime

for cash. The cash proceeds were then commingled with the testatrix's other funds for the purchase of a certificate of deposit. The Court of Appeals endorsed what it termed the "Modern Rule" for considering ademptions which is to look at whether a mere change in form regarding the specific devise or bequest has occurred or a change in substance, which would constitute an ademption. The suggestion is made in *Jennings* that focusing on the intent of the testatrix is the more traditional view, and the Court of Appeals cites *Williamson* v. *Merritt, supra,* for that view. Though the Court of Appeals admitted that the sale proceeds from the Lester Land Company interest could be traced to the C.D., it concluded that the testatrix had done nothing subsequently to show that she wanted to pass the cash proceeds of the Lester Land Company interest or the C.D. to Jennings. The Court of Appeals held that the change from land to money worked an ademption.

Finally, in *Kidd* v. *Sparks*, 276 Ark. 85, 633 S.W.2d 13 (1982), this court held that an ademption occurred under facts similar to the case at bar. In *Kidd*, the testator willed to his son and daughter the proceeds from two real estate escrow accounts funded by periodic mortgage payments by third parties. Nine months before the testator's death, the note secured by one mortgage (the Gardner note) was paid off in the amount of $12,405.65. The testator took that amount and supplemented it with his own personal funds to buy a certificate of deposit in the amount of $15,000. In holding that an ademption had occurred, we made the following comment:

> Common logic says that the Gardner note had been adeemed prior to the testator's death. Obviously, the testator could have placed his childrens' (sic) names on the CD if he had wanted them to receive it. The trial court seems to have looked to the intent of the testator in making its ruling. Absent obvious error we will not reverse the trial court in its holding. The paramount aim in the construction of a will is to determine and give effect to the testator's intention. We hold the Gardner property was adeemed in accordance with the reasoning and holding in *Mee* v. *Cusineau, supra.*

276 Ark. at 89, 633 S.W.2d at 15-16.

The *Kidd* case, which is our most recent pronouncement on the ademption issue, differs from the case before us in that the probate court here did not find that an ademption had occurred. We disagree with the probate court, however, and hold to the contrary. The probate court in this case used the form/substance test referred to in *Jennings* v. *National Bank of Commerce, supra,* in concluding that no ademption occurred. The court said: "It was the intent of the decedent to leave these funds to [Helen Mayberry] and the purchase of the Certificates of Deposit constituted only a change in form and not substance." Surely the original intent was to leave the bank savings account at Arkansas Bank & Trust Company to Helen Mayberry, but we cannot agree that what occurred afterwards amounted only to a change in form. The savings account bequeathed was terminated and certificates of deposit were purchased using several sources of funds, including the savings account in issue. In addition, the value of the purchased C.D.'s is appreciably more than the value of the original savings account — more than $44,000 — because considerable personal funds of Nora Mayberry were used to purchase the C.D.'s and considerable interest has accrued. Commingling of funds was a factor we considered to be important in *Kidd* v. *Sparks, supra,* in deciding that ademption had occurred, and it is equally important here. Finally, Helen Mayberry's name was not included on the C.D.'s, which Nora Mayberry easily could have done. Under these circumstances, we conclude that what transpired was a substantive change in what had been bequeathed to Helen Mayberry and not merely a change in form.

To eliminate any confusion between our caselaw and that of the Court of Appeals, we reiterate what we stated in *Kidd* v. *Sparks, supra,* that in ademption cases our primary aim is to determine and give effect to the testator's intention. However, in most instances a determination of whether a change in the gift's form or substance occurred will decide the issue of what the testator intended. Here, there was a change in substance. Also, there is the fact that Nora Mayberry's will specifically excluded gifts of C.D.'s to Helen Mayberry except as specifically devised and bequeathed, which is further evidence of her intent not to have the C.D.'s go to her daughter.

We hold that an ademption of the gift of the savings account at Arkansas Bank & Trust Company occurred, and that

the probate court clearly erred in finding that only a change in form took place so as not to work an ademption. We reverse the probate court's order and remand the matter for entry of an order in accordance with this opinion.

Reversed and remanded.

HAYS, J., dissents.