SMITH *v.* SMITH.

5-1621                                                  317 S. W. 2d 275

Opinion delivered November 3, 1958.

[Rehearing denied December 1, 1958]

*Lee Seamster & Russell Elrod; Barney Hamilton,* Kansas, Okla., for appellant.

*A. L. Smith,* for appellee.

CARLETON HARRIS, Chief Justice. Hugh Smith and Lucy Coleman Smith, his wife, lived at Siloam Springs, Arkansas. They had no children. On April 22, 1947, Mrs. Smith executed a will leaving all property to her husband.[1] On November 3, 1952, Mr. Smith executed a will leaving all property to his wife. On April 19, 1957, while riding together in an automobile, the Smiths had an accident. Hugh Smith was dead when assistance arrived at the scene, and Lucy Coleman Smith was unconscious, and remained so until her death seventeen days later on May 6th. Clint Smith, appellant herein, and brother of the deceased, was named administrator, with the will annexed, of the estate of Hugh Smith. A. L. Smith, appellee herein, was named administrator, with the will annexed, of the estate of Lucy Coleman Smith. Both estates are now pending in the Benton County Probate Court. The administrator of the Hugh Smith estate filed a petition asking for a construction of the two wills. A. L. Smith, administrator of the estate of Lucy Coleman Smith, demurred to the petition, setting out that the

---

[1] On February 10, 1954, Mrs. Smith signed a typewritten statement in the form of a will, attempting to dispose of certain property which she had received in 1948 from a deceased sister, Mrs. Mary Grant Sills of Denver, Colorado. These addenda attempted to make certain bequests for the benefit of a brother, certain nephews and nieces, and the establishment of a memorial. This statement was signed by Mrs. Smith but not witnessed. We do not consider that this statement has any bearing on the issues in this case.

petition with exhibits[2] thereto, showed on its face that the two wills were not ambiguous, that appellant had no right or interest in the estate of Lucy Coleman Smith that would entitle him to a construction of her will; that the petition showed that the estate of Hugh Smith, under the terms of his will, became the property of Lucy Coleman Smith at his death, and since her decease, had become the property of her heirs, named in the petition; that the petition set forth no facts which would authorize the consolidation of the cases for the purpose of construing the wills of Hugh Smith and Lucy Coleman Smith, and asked that the demurrer be sustained and the petition dismissed. The heirs of Mrs. Smith also filed a demurrer, adopting as their own the demurrer filed by appellee administrator. On hearing, the court sustained the demurrers, and dismissed the petition of appellant for construction of the wills. From such order, comes this appeal.

We deem it first proper to relate the provisions of the two wills. Lucy Coleman Smith's will was properly executed on April 22, 1947, and after formalities, consists of three items. Item one directs the payment of debts at the time of death, and expenses of last illness and funeral. Item two provides: "All the rest and residue of my property, real, personal or mixed, and wheresoever it may be situate, and of whatsoever it may consist, I give, devise and bequeath to my husband, Hugh Smith, absolutely and without any limitation whatever." Item three appoints the husband, Hugh Smith as executor of the will, to serve without bond. Hugh Smith's will was executed on November 3, 1952, and after formalities, consists of two items. Item one directs the payment of debts at the time of death, and expenses of last illness and funeral. Item two reads as follows: "All of the rest and residue of my property, of whatsoever it may consist, and wheresoever it may be situated, I give, devise and bequeath to my wife, Lucy Coleman Smith, absolutely and without any limitations

---

[2] The will of Hugh Smith, the will of Lucy Coleman Smith, and the typewritten statement signed by the latter.

whatever, and I hereby nominate and appoint said Lucy Coleman Smith to be Executrix of my will, and request that she be permitted to serve as such without giving bond.'' These instruments would seem to be entirely clear, but appellant bases his argument for reversal upon the allegation that a latent ambiguity was created, and that in such a situation, the court will aid itself by resorting to extrinsic facts and circumstances to determine the actual intent of the testators. The latent ambiguity, says appellant, is created by the following circumstances: first, the wills provide for the survivor to be executor, or executrix, as the case might be, without any alternate or substitute mentioned; second, as a result of the accident, both testators lost their power to will at the same instant; third, the Arkansas Uniform Simultaneous Death Act placed a common disaster clause in both wills, and finally, ''facts and circumstances surrounding the accident.'' These ''facts and circumstances'' are not set out in any pleading.

The petition for construction contains a quite unusual and unique allegation. We quote:

''That the said Hugh Smith and his wife, Lucy Coleman Smith, were in an automobile accident on the 19th day of April, 1957, said accident being instantly fatal to each of them at the same time, although the doctors maintained a vain hope of survival and made every effort to revive and resuscitate said Lucy Coleman Smith until May 6th, 1957, when it was finally determined by the attending physicians that their hope of resuscitation and possible restoration of human life to the said Lucy Coleman Smith was entirely vain, and

That as a matter of modern medical science, your petitioner alleges and states, and will offer the Court competent proof that the said Hugh Smith, deceased, and said Lucy Coleman Smith, deceased, lost their power to will at the same instant, and that their demise as earthly human beings occurred at the same time in said automobile accident, neither of them ever regaining any consciousness whatsoever.''

It is interesting to note that these allegations are entirely contrary to an earlier petition filed on the approved Probate form by appellant, when seeking to admit Hugh Smith's will to Probate.   There, it was averred:

"Nominee is brother of decedent.   Lucy Coleman Smith is in a critical condition as a patient in the Siloam Springs Memorial Hospital and is unconscious and, therefore, is physically and mentally unable to serve as executrix.   Administration is necessary to preserve the estate."

On the same date, a prepared petition was filed by Clint Smith, together with Dr. John L. Stockton, a nephew of Hugh Smith, containing the following allegation:

"That said Hugh Smith died, testate, and left surviving his widow, Lucy Coleman Smith, who sustained severe injuries as result of the same accident and is now a patient in the Siloam Springs Memorial Hospital in Siloam Springs, Arkansas, and is in a critical condition and unconscious, and it is the information and belief of the Petitioners and according to information from the doctors and attendants of Lucy Coleman Smith, that she will be incapacitated for several months;   *   *   *   ."
These petitions sought to name appellant as executor of Hugh Smith's estate (which order was subsequently entered), and apparently as evidence of Lucy Coleman Smith's inability to act, a letter from C. D. Gunter, M. D., was attached to the petition.   The letter is as follows:

"Mrs. Lucy Smith, widow of the late Hugh Smith, was severely injured in the same accident that caused her husband's death.   Since the accident on 19th April, she has remained in coma due to brain injury.   Her mental status after recovery is impossible to evaluate at the present, but it will probably be several months before she would be considered competent.   Her other damage consists of fractures of both femurs, fracture of knee joint and fractures of the left arm in several places. These will require several operations and a year would

be a conservative estimate of the time before she will be able to be about and manage her affairs.''

However, we shall not include in this discussion the question of whether appellant is bound by the statements made in the earlier petitions, but we mention them only to show that after Hugh Smith's death, Mrs. Smith continued to live, in the ordinary and accepted meaning of the word, and that appellant recognized that fact.

We proceed to a perusal of appellant's contention that a latent ambiguity was created. An ''ambiguity'' is defined by Bouvier's Law Dictionary, Vol. 1, 3rd Revision, as ''indistinctness, or uncertainty of meaning of an expression used in a written instrument.'' There are two kinds of ambiguity — patent and latent. According to Bouvier: ''Patent is that which appears on the face of the instrument; that which occurs when the expression of an instrument is so defective that a court which is obliged to place a construction upon it, cannot, placing itself in the situation of the parties, ascertain therefrom the parties' intention.'' On the other hand, according to Volume 2, Bouvier's Law Dictionary, a latent ambiguity is ''one which does not appear on the face of the instrument. A latent ambiguity is where words apply equally to different things or subject matter. * * * '' Further discussing the subject, the writer says:

''Where a determinate intention appears to be expressed by the written instrument, extrinsic evidence is admissible to show that the description of an object contained in the instrument is applicable with legal certainty to either of two objects; and, a latent ambiguity having thus been disclosed, evidence of the surrounding circumstances is admissible to show which of the objects was meant by the description. * * * ''

Interesting examples are then mentioned. For instance:

''* * * where a testatrix gave a share of her residue to her 'cousin, Harriet Cloak,' and the testatrix had no cousin of that name, but had a married cous-

in, Harriet Crane, whose maiden name was Cloak, and a cousin, T. Cloak, whose wife's name was Harriet; evidence was admitted to show the testatrix's knowledge of *an* intimacy with the members of the Cloak family.''
Further,

''\* \* \* a good type of the 'American doctrine' was a devise to 'the four boys,' where the testator had seven sons, of whom three were shown to be minors living at home.''

Possibly a more simple example of latent ambiguity would occur if a testator should leave a bequest to John Smith, and there were two John Smiths who could be intended as legatee. In such event, evidence would be admissible to show which John Smith the testator intended.

We will discuss each fact that appellant contends, taken together, creates a latent ambiguity, except the ''facts and circumstances surrounding the accident.'' This cannot be discussed nor considered, because the allegation is only general, and no specific facts or circumstances are set out in the petition. First, appellant says the fact that neither testator named an alternate executor showed that each expected the other to live and enjoy the property bequeathed and devised. Frankly, we see no significance to this circumstance. Naturally, when one executes a will, he more or less assumes that the executor named will be able to serve; otherwise, he would name someone else. But, though unable to check the point, we venture to say that a majority of wills do not provide for an alternate executor, while some others name no executor at all. The wills before us seem to have been made in a completely normal manner. A husband, or wife, more often than not, names the other as executor (or executrix), and in a great many instances, leaves all property to the surviving spouse. This, of course, is particularly true where there are no children.

Nor are we impressed by appellant's argument as to the second circumstance relied upon by him. In the brief, appellant states:

"Under the allegations of the petition, both Lucy Coleman Smith and Hugh Smith at the same time lost the power to will, power to administer the estate of the other, and power to enjoy the estate of the other. Since both lost all of these powers at the same time, both lost the power to accept the bounty of the other under the reciprocal wills. Hence, both the will of Lucy Coleman Smith and the will of Hugh Smith lapsed and neither is effective to transmit the estate of either."

It is pointed out that the petition for construction of the wills (heretofore quoted) was disposed of by demurrer, which means that the facts alleged in the petition are admitted to be true;[3] that if such facts are true, a cause of action is stated, and appellant accordingly should be permitted to proceed with his proof. Let it first be observed that in reading appellant's petition, as a whole, the assertion of the death of Lucy Coleman Smith appears to be predicated on the theory that such demise occurred "as a matter of medical science," and of course, appellant could not have meant otherwise, for he had already filed the petitions, heretofore mentioned, in the probate court, together with the physician's letter, stating that Mrs. Smith was a patient in the hospital, and would be incapacitated for several months. Black's Law Dictionary, 4th Edition, page 488, defines death as follows:

"The cessation of life; the ceasing to exist; defined by physicians as a total stoppage of the circulation of the blood, and a cessation of the animal and vital functions consequent thereon, such as respiration, pulsation, etc., * * * ."

Admittedly, this condition did not exist, and as a matter of fact, it would be too much of a strain on credulity for us to believe any evidence offered to the effect that

[3] For the purpose only of determining the sufficiency of the pleadings.

Mrs. Smith was dead, scientifically or otherwise, unless the conditions set out in the definition existed. The trial court was entirely justified in sustaining the demurrers. In Vol. 41, American Jurisprudence, Sec. 244, page 463, we find:

"Those allegations of a pleading * * * which are contrary to the facts of which judicial notice is taken are not admitted by a demurrer, but are treated as a nullity. The court cannot thus be prevented from passing upon allegations which in their nature are contrary to common experience and common knowledge as a matter of law, or allegations which the law does not allow to be proved."

For instance, in *Southern Railway Company* v. *Covenia*, 100 Ga. 46, 29 S. E. 219, the court took judicial notice of the fact that an infant twenty months of age, is incapable of rendering valuable services, such as running errands, bringing in wood etc., despite allegations to the contrary. There, a child 18 months and 10 days of age was killed by one of appellant's trains, and suit was instituted, alleging *inter alia* that the child

"* * * was capable of rendering, and did render to the plaintiff valuable services, by going upon errands to neighbors residing near to plaintiff's residence, picking up and bringing in coal and chips to make and keep burning fires in the house, bringing the broom and other articles used in house cleaning to his mother, picking up and carrying out of the house trash and litter which tended to render untidy in appearance plaintiff's home, watching and amusing plaintiff's younger child while his wife was engaged in cooking and attending to her household duties; and that these services were worth to the plaintiff the sum of two dollars per month, * * * ."

The railroad demurred to these allegations, and the trial court overruled such demurrer. In reversing the trial court, the Supreme Court of Georgia, in an opinion written by the Chief Justice, said:

"The question is, therefore, squarely made whether the court, on demurrer, can take judicial cognizance of the fact that a child of this tender age is incapable of rendering such service as would authorize the parent to recover, or whether, in such a case, the court is bound to submit the matter to the jury. In the case of *Minnesota* v. *Barber,* 136 U. S. 321, 10 Sup. Ct. 862, Mr. Justice HARLAN said: 'If a fact alleged to exist, upon which the rights of parties depend, is within common experience and knowledge, it is one of which the courts will take judicial notice.' In *Ho Ah Kow* v. *Nunan,* 5 Sawy. 560, Fed. case No. 6546, Mr. Justice FIELD said: 'We cannot shut our eyes to matters of public notoriety and general cognizance. When we take our seats on the bench, we are not struck with blindness, and forbidden to know as judges what we see as men.' In the case of *King* v. *Gallun,* 109 U. S. 99, 3 Sup. Ct. 85, it was held that 'the court will take judicial notice of matters of common knowledge, and of things in common use. Courts will take judicial notice of facts generally known as of uniform occurrence,   *   *   *   .'

*   *   *

In our opinion, there can be no issue of fact as to the ability of a child two years old to perform valuable services. Even if the parent should testify that a child of that age could render services of the value of two dollars per month, it would be so inconsistent with every person's knowledge of the incapacity of children of that age to render service that such testimony would be unworthy of credit.

*   *   *

But it is contended that by the demurrer in the court below it was admitted that the child was capable of rendering service, and that therefore the court was right in overruling the demurrer.   *   *   *   In passing upon a demurrer to a declaration, the court considers all the allegations therein. The demurrer admits all the facts well pleaded. If all the facts, taken together show that the plaintiff is not entitled to recover, the court should sustain the demurrer,   *   *   *   . If the major prem-

ise in the declaration shows no cause of action, the minor premise will not aid in sustaining it. *  *  * ''[4]

Likewise, we take judicial notice that one breathing, though unconscious, is not dead.

Appellant contends that the provisions of the simultaneous death act, found in Section 61-124, Volume 5, Arkansas Statutes, Annotated, apply. This section reads as follows:

"Where the title to property or the devolution thereof depends upon priority of death and there is no sufficient evidence that the persons have died otherwise than simultaneously, the property of each person shall be disposed of as if he had survived, except as provided otherwise in this act."

Appellant argues that this is a "common disaster" statute, and that under such an interpretation, Smith and his wife died at the same time, because they died as a result of a common disaster. Three cases are cited, but none of these deal with an interpretation of the Uniform Simultaneous Death Act. The main case relied upon by appellant is *Hackensack Trust Co.* v. *Hackensack Hospital Ass'n.* 120 N. J. Eq. 14, 183A. 723. The facts were as follows: Mrs. Flora Curry Adams and daughter were in an automobile accident in which they were fatally injured. They were taken to a hospital, where Mrs. Adams died in about one hour and the daughter about thirteen hours later. Mrs. Adams had made a will which left all of her property to her daughter, except

"*  *  * but should my said daughter predecease or not survive me, or should she and I perish in a common disaster, she leaving no issue her surviving, I give, devise and bequeath all of my residuary estate as follows: *  *  * ."

Here, contingent beneficiaries were named. The Court said:

---

[4] The court then mentions several imaginary situations that would not be admitted by demurrer; for instance, if the child had been 6 months of age; allegations charging a five year old boy with rape, etc.

''The contentions in the instant suit are based upon construction of the language of the will, which in the one case would interpret the will as though it read 'perish as a result of a common disaster,' while the adverse group of interests would limit the expression so as to make it read substantially 'perish exactly or almost exactly at the time and place of the accident.'

The contentions of the executor of the daughter's estate and those claiming under the daughter's will are that the word 'in' is to be strictly construed as to time and place, and that since neither the mother nor the daughter died immediately or at the scene of the accident, and that since the daughter survived the mother by more than twelve hours, that their deaths were not 'in' a common disaster.

On the other hand, those claiming under the alternative provisions of the residuary clause contend that the expression 'in a common disaster,' as used in ordinary language, is broad enough to include deaths resulting from an accident although not simultaneous. They further contend that from the provisions of the will it was not the intent of testatrix that the daughter should take the residuary estate unless she could have the beneficial enjoyment of it, and that it was also the intent of the testatrix that the residuary estate should be disposed of according to her own wishes unless the daughter should survive her so as to substantially benefit. * * * .''
Referring to the will:

''It sets up three contingencies under any one of which the daughter was not to take. It says, '* * * should my said daughter predecease,' second, 'or not survive me.' This second phrase cannot mean anything else except the simultaneous deaths of both of them. The three contingencies would accordingly seem to provide for a possible third other than the prior or simultaneous death of the daughter, namely, in a common disaster with the mother. This would therefore include survival by the daughter of the mother provided they both met their deaths because of a common accident,

since prior or simultaneous deaths had already been provided for.''

It will be noted that there is no reference in Hugh Smith's will to death from common disaster; for that matter, there is nothing in the Statute which refers to death by common disaster, though, of course, the situation of simultaneous death would, in a great majority of instances, arise from such an event. But it is possible for people to die simultaneously from natural causes under circumstances that would prevent a determination of who died first. See *In re Dunham's Will*, N. Y. S. 2d 571. At any rate, according to Webster's dictionary, simultaneous means, ''the same time,'' and the Statute refers only to such deaths. Volume 9-C, Uniform Laws, Annotated, reflects that this section is an exact copy of Section 1 of the Uniform Simultaneous Death Act, which has been adopted in at least thirty-seven of our states. A study of the cases quoted reflects that the provisions of the statute never apply unless there is no sufficient evidence to determine which party died first. In the case, *Sauers, Administratrix* v. *Stolz*, 121 Colo. 456, 218 P. 2d 741, a husband and wife were in an automobile accident, and the evidence showed that the husband outlived the wife for a few moments. The trial court found that the husband and wife died simultaneously, and the Colorado Supreme Court, in reversing the lower court, said:

''The court,[5] in making the above findings, apparently relied upon chapter 197, S. L. '43, known as the uniform simultaneous death act, which provides in part as follows: 'Section 1. Where the title to property or the devolution thereof depends upon priority of death and there is no sufficient evidence that the persons have died otherwise than simultaneously, the property of each person shall be disposed of as if he had survived, except as provided otherwise in this act.' Where two or more persons perish in a common disaster, such as here, and there is no proof as to which died first, the statute fur-

[5] Referring to the trial court.

nishes a guide, in the absence of evidence, by which descent of property may be judicially determined, and creates a presumption that death of the parties was simultaneous. *The statute is inapplicable if there is evidence as to which one of the parties survived the other*[6] or if there are particular circumstances from which the fact of survivorship may be inferred. The presumption of simultaneous death of the parties was not intended to take the place of competent, positive and direct evidence, and the fact of survivorship requires no higher degree of proof than any other fact in the case.''

See also *In re DiBella's Estate*, 100 N. Y. S. 2d 763, where the court, in construing Section 1, stated:

''Of course, in sustaining her burden of proof, it is entirely unnecessary for the petitioner to show by a fair preponderance of the evidence that the husband survived the wife by any matter of hours. If the proof is sufficient, one second would be enough.''

To summarize and conclude, this litigation is determined by two facts. First, Hugh Smith and Lucy Coleman Smith did not die simultaneously, and second, there is no ambiguity.

It is well settled law in this state, so well settled as to require no citation of authority, that where there is no ambiguity, or no conflict or repugnance between provisions of a will, judicial interpretation or construction is not required.

Accordingly, the order sustaining the demurrers, and dismissing the petition for the construction of the wills is affirmed.

---

[6] Emphasis supplied.