Tyronda Michelle McCullum McCURTIS, a minor By and Through her mother and guardian, Deborah McCullum LOVE; the Estate of Grant D. McCurtis, Sr.; the Estate of Grant D. McCurtis, Jr., Plaintiffs,

v.

LIFE INSURANCE COMPANY OF NORTH AMERICA, Defendant.

Civ. A. No. 4:93–CV–29 (L) (N).

United States District Court,
S.D. Mississippi, E.D.

Feb. 18, 1994.

David M. Ratcliff, Ratcliff & Ratcliff, Laurel, MS, for plaintiffs.

John E. Hughes, III, Wells, Wells, Marble & Hurst, Jackson, MS, for defendant.

### MEMORANDUM OPINION AND ORDER

TOM S. LEE, District Judge.

This cause is before the court on the motion of defendant the Life Insurance Company of North America (LINA) for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. Plaintiffs Tyronda McCurtis and the Estates of Grant McCurtis, Sr. and Grant McCurtis, Jr. have responded and the court, having considered the memo-

randa submitted by the parties, together with additional pertinent authorities, concludes that defendant's motion should be granted.

In this action, plaintiffs demand $40,000 in insurance benefits, which they insist are payable under policies issued by LINA. They also seek $5,000,000 in punitive damages from defendant for its alleged "bad faith" refusal to pay those benefits. The case, initially filed in the Circuit Court of Jasper County, Mississippi, was timely removed by defendant on the basis that diversity jurisdiction exists and that the case arises under the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1001 *et seq.*

### Facts

Mary McCurtis and her son, daughter and husband, Grant McCurtis, Jr., Keyenner Stevens and Grant McCurtis, Sr., respectively, were killed in a three-car collision on October 12, 1991. The family car struck another vehicle, and upon impact, both vehicles burst into flames which engulfed and killed the occupants. At the time of and preceding the accident, Mary McCurtis was an employee of Nazerth/Century Mills, Inc. (Nazerth), which maintained a number of employee benefit plans, including a term life insurance plan and an accident plan that contained coverage for accidental death. Mary was a covered employee under both plans, and McCurtis, Sr. and McCurtis, Jr. were covered dependents under her policies. McCurtis, Sr. was insured for $20,000 under the life insurance policy and $8,000 under the accident policy, and McCurtis, Jr. had coverage under the policies in the amounts of $10,000 and $2,000, respectively. The right to these proceeds is the subject of the parties' dispute in this case.[1]

Following the accident, the attorney for Mary McCurtis' estate, Marvin Oates, requested that LINA pay Mary's estate all of the proceeds due under the policies for the deaths of McCurtis, Sr. and McCurtis, Jr. Initially, LINA expressed concern as to the

---

1. Mary McCurtis and Keyenner Stevens were also insured under the policies and policy benefits due upon their deaths have been paid. The payment of those proceeds is not at issue in this action.

propriety of paying the benefits to Mary's estate. In a January 14, 1992 letter to Oates, LINA took the position that all of the deaths had occurred simultaneously and that consequently, distribution of policy proceeds was governed not by any terms of the policy but rather by state simultaneous death laws. In response to LINA's apparent reluctance to pay the benefits as requested, Oates provided to LINA the affidavits of Bobby Stevens and Oscar Stevens, Jr., who had arrived at the accident scene shortly after the collision. Both affiants stated that Mary McCurtis was the last occupant of the vehicle to die as a result of the collision, and explained that Mary was struggling to extricate herself from the burning vehicle while the remaining family members were motionless and appeared to be dead. On March 16, shortly after receiving these affidavits, LINA advised Oates that under the provisions of the policy, though no specific provisions were identified, the benefits at issue were, in fact, payable to Mary's estate.[2]

In the meantime, prior to Oates' submission of the Stevens' affidavits to LINA, Tyronda McCullum, now Tyronda McCurtis, through her attorney, Jack Brand, filed a paternity suit seeking to be adjudicated McCurtis, Sr.'s daughter. Upon learning of the paternity action, Oates alerted LINA that Tyronda might claim an interest in the disputed insurance proceeds. Anticipating this eventuality, LINA advised Brand that the dependents' insurance benefits were, according to its interpretation of the policy, payable to Mary's estate, though LINA again failed to identify the relevant policy provisions. On behalf of Tyronda, Brand agreed to this distribution of proceeds, on the condition that he be provided a copy of Mary's beneficiary designations.[3] On April 7, LINA furnished this information and thereafter, on April 13, issued the benefit checks, with Mary's estate receiving the proceeds on McCurtis, Sr.'s and Jr.'s lives.[4]

Soon after these payments were made, LINA received a letter from David Ratcliff, Tyronda's new attorney, who claimed that the disputed proceeds were payable, not to Mary's estate, but to the estates of McCurtis, Sr. and McCurtis, Jr. Though LINA responded by informing Ratcliff that the proceeds had already been paid to Mary's estate, Ratcliff, on Tyronda's behalf, objected to this distribution, citing a provision of the policy which stated that "Life Insurance benefits paid on account of a covered dependent will be paid to the employee, if she is living. If not, we will pay the dependent's Estate." Ratcliff insisted that since Mary had died in the accident and hence, was no longer "living," the benefits should have been paid to the dependents. LINA, though, rejected this position, explaining in a July 6, 1992 letter that, although the policy provision cited by Ratcliff was applicable, since Mary had, in fact, outlived McCurtis, Sr. and McCurtis, Jr., and was thus "living" at the time of their deaths, Mary's estate, and not the estates of McCurtis, Sr. and Jr., was entitled to the proceeds.

Tyronda was adjudicated by the chancery court to be McCurtis, Sr.'s daughter on July 28, 1992, and several months later made a final demand for payment from LINA. Her demand was denied, and on March 28, 1993, Tyronda and the estates of McCurtis, Sr. and McCurtis, Jr. filed this action claiming that the proceeds should have been distributed to McCurtis, Sr.'s and McCurtis, Jr.'s estates, which would entitle Tyronda, as the only heir of both estates, to all of the insurance proceeds.

### Analysis

 The parties agree that the life and accident plans provided by Mary McCurtis' employer are governed by ERISA.[5] But

---

**2.** The letter also informed the attorney that under the policy, benefits on the life of Mary McCurtis were not payable to her estate, but rather were payable to her mother and father.

**3.** The beneficiary cards reflect that Mary had designated McCurtis, Sr. and Jr. as the primary beneficiaries, and her daughter as the contingent beneficiary. All were killed in the accident.

**4.** Checks were also issued to Mary's mother and father for Mary's death and a check was issued to Mary's estate for her daughter's death.

**5.** Although not challenged by plaintiff, the court would note that the life and accident protection offered by Nazerth to Mary McCurtis and her dependents appears to qualify as an "employee benefit plan" under ERISA. The term "employ-

they have markedly different views of ERISA's preemptive effect in this matter. ERISA preempts "any and all state laws insofar as they may now or hereafter relate to any employee benefit plan." 29 U.S.C. § 1144(a); *see Shaw v. Delta Air Lines, Inc.,* 463 U.S. 85, 91, 103 S.Ct. 2890, 2896–97, 77 L.Ed.2d 490 (1983). This normally includes all state laws which either directly or indirectly affect employee benefit plans. *Lee v. E.I. Du Pont de Nemours & Co.,* 894 F.2d 755 (5th Cir.1990); *see also Goodman v. S & A Restaurant Corp.,* 756 F.Supp. 966 (S.D.Miss.1990). However, specifically excepted from ERISA's preemptive reach are state laws which regulate "insurance, banking, or securities." 29 U.S.C. § 1144(b)(2)(A). In this case, plaintiffs contend that the Mississippi Simultaneous Death Law, Miss.Code Ann. § 91–3–1 *et seq.,* which establishes a distribution scheme for insurance proceeds in the event of simultaneous death, "regulates insurance" and thus falls within the purview of this exception.[6]

The particular provision of Mississippi's Simultaneous Death Law which plaintiffs contend is not preempted by ERISA and which they thus contend governs the proper distribution of the disputed proceeds is Miss. Code Ann. § 91–3–11 (1972), which provides as follows:

> Where the insured and the beneficiary in a policy of life or accident insurance have died and there is insufficient evidence that they have died other than simultaneously, the proceeds of the policy shall be distrib-

uted as if the insured had survived the beneficiary.

Clearly, if the appropriate distribution of insurance proceeds were required to be determined solely in accordance with this statute and further, if the deaths of McCurtis, Sr. and McCurtis, Jr. were simultaneous within the contemplation of the statute, the benefits would be payable to McCurtis, Sr.'s and McCurtis, Jr.'s estates, and hence to Tyronda as the sole heir of those estates. Indeed, this is precisely the plaintiffs' position. In a nutshell, they argue that this statute "regulates insurance" such that it is not preempted; that the deaths involved here were "simultaneous"; and that consequently, this statute governs and mandates payment of the policy benefits to Mary's dependents' estates and hence to Tyronda.

LINA, while denying that this state law is excepted from ERISA's preemption, contends that a decision on that particular issue is not ultimately determinative of the question presented in this case, i.e., whose estate was entitled to receive payment under the dependents' policies, since whether preempted or not, the result would be the same. LINA reasons that, irrespective of whether Mississippi's Simultaneous Death Law is or is not preempted, LINA's specific *factual* finding that Mary outlived her family is amply supported by the evidence in the administrative record and that therefore, this court must defer to that finding. And, because the court must accept LINA's finding in this regard, it follows that the Mississippi Simul-

ec benefit plan" includes "employee welfare benefit plan[s]," 29 U.S.C. § 1002(3), defined as: any plan * * * or program ... established or maintained by an employer ... to the extent that such a plan, fund or program was established * * * for the purpose of providing its participants or their beneficiaries ... benefits in the event of ... *accident,* disability, *death....* 29 U.S.C. § 1002(1) (emphasis added).

6. Plaintiffs also argue that if the Mississippi Simultaneous Death Law is not preempted, then neither are their state law claims for breach of contract and breach of an implied covenant, since these claims arose as a result of defendant's violation of Mississippi's Simultaneous Death Law. As defendant aptly characterizes plaintiffs' position, plaintiffs contend that their state contract claims "piggyback" onto their Simultaneous Death Law claim. The court concludes,

however, that even if, as plaintiffs argue, the Simultaneous Death Law is not preempted, their state law contract claims are preempted. *See Cefalu v. B.F. Goodrich Co.,* 871 F.2d 1290 (5th Cir.1989) (contractual claims of a similar nature held preempted); *Haggard v. Armstrong Rubber Co.,* 767 F.Supp. 119 (M.D.La.1991) (same). Contrary to LINA's assertion, though, the mere fact that those claims are preempted does not mean that they are not cognizable. To the contrary, a ruling that the claims are preempted means only that the court would be required to recharacterize the claims as claims under ERISA, i.e., as claims for plan benefits under ERISA. *See Degan v. Ford Motor Co.,* 869 F.2d 889, 893 (5th Cir.1989) (preemptive effect of ERISA effectively recharacterizes state law claims into actions arising under federal law).

taneous Death Law, even if not preempted, would be inapplicable because that law only governs where deaths are *simultaneous.* The court agrees.

By its terms, § 91–3–11, quoted above, applies only where there is insufficient proof that the deaths of an insured and beneficiary are "other than simultaneous." By deciding that Mary McCurtis lived longer than McCurtis, Sr. and McCurtis, Jr., LINA found, in effect, that the deaths were "other than simultaneous." The success of plaintiffs' claim, then, regardless of whether ERISA preempts Mississippi's Simultaneous Death Law, depends on the court's rejection of LINA's factual determination, for if LINA's finding in this regard is accepted, then that law would not apply even if it is not preempted by ERISA. In view of this circumstance, one of the primary points of contention between the parties is the weight, if any, to be accorded LINA's factual decision that Mary McCurtis outlived the other occupants of the vehicle for ultimately, this is the determinative issue in this case.

■ Under ERISA, the factual findings of a plan administrator, such as LINA, are reviewed using an abuse of discretion standard, *Pierre v. Connecticut General Life Ins. Co.,* 932 F.2d 1552, 1562 (5th Cir.), *cert. denied,* —— U.S. ——, 112 S.Ct. 453, 116 L.Ed.2d 470 (1991), which means that "federal courts owe due deference to an administrator's factual conclusions which reflect a reasonable and impartial judgement." *Id.; see* 29 U.S.C. § 1102(a)(1) (granting administrators authority to manage plans). Plaintiffs acknowledge this as the proper standard of review of fact findings with respect to claims governed by ERISA, but contend that (1)

their claim to benefits under the Simultaneous Death Law is not governed by ERISA such that no deference is to be accorded LINA's findings, and (2) that LINA's finding is not supportable under the standards for determining whether deaths are "simultaneous" under state simultaneous death laws.

■ As to the former contention, even were the court to assume arguendo, in accord with the position espoused by plaintiffs, that Mississippi's Simultaneous Death Law is not preempted by ERISA, that would not mean, as plaintiffs seem to suggest, that the court would abandon the abuse of discretion standard of review for the administrator's fact findings which otherwise applies in ERISA cases. Rather, a ruling that the Simultaneous Death Law was not preempted would mean only that the court would treat that law as though a part of the policy issued by LINA and determine what effect, if any, that law would have on the distribution of policy benefits. *See Mississippi Valley Gas Co. v. Boydstun,* 230 Miss. 11, 92 So.2d 334, 340 (1957) (laws in force at time of contract execution form part of it as though expressly written therein). But just because the court would incorporate the Simultaneous Death Law into LINA's policies does not suggest any basis or need to alter the analysis and treatment of an administrator's factual findings.[7] The standard of review of those findings would remain the same.

■ As administrator, it was LINA's responsibility to determine whether the deaths were simultaneous. And in the court's opinion, the administrative record[8] supports LINA's conclusion that Mary McCurtis survived the other passengers. The only evidence presented to LINA on the

---

7. Section 91–3–11 applies only if the policy does not otherwise provide for distribution of proceeds in case of simultaneous death. *See* Miss. Code Ann. § 91–3–15. Since the parties have not identified and the court has been unable to locate a policy provision which sets forth a distribution scheme in the case of simultaneous death, the court assumes that one does not exist.

8. Generally, in reviewing a plan administrator's factual findings, the court considers only "the evidence before the administrator, assuming that both parties were given an opportunity to present facts to the administrator." *Wilbur v. ARCO*

*Chem. Co.,* 974 F.2d 631, 639 (5th Cir.1992); *see also Perry v. Simplicity Eng'g,* 900 F.2d 963 (6th Cir.1990) (review of factual determinations limited to administrative record). Though Tyronda clearly had the opportunity to do so, she failed to present any evidence to LINA indicating that Mary did not survive her family. In fact, she actually acquiesced, at least initially, to LINA's distribution of the insurance proceeds to Mary's estate. Further, plaintiffs also have introduced no evidence outside of the administrative record which might tend to demonstrate that Mary outlived her family.

question of the timing of the deaths was the affidavits of Bobby Stevens and Oscar Stevens, Jr., both of whom claimed that Mary was the last in the vehicle to die. Given this evidence, LINA's determination of that issue would seem to be reasonable and not an abuse of discretion.[9] Plaintiffs, though, contend that LINA's finding must be rejected since it is not supported by medical evidence. They assert that the majority of courts, in applying the Uniform Simultaneous Death Law, have required medical testimony to establish survivorship and that, since no medical evidence was presented to or considered by LINA, then its decision is unfounded.[10] However, contrary to plaintiffs' position, medical evidence is not essential to prove survivorship under simultaneous death laws. A review of pertinent cases establishes that while medical testimony is frequently presented and often preferred, it is not required. See *Schmitt v. Pierce*, 344 S.W.2d 120 (Mo. 1961) (survivorship established by lay witness testimony); *In re Davenports' Estates*, 79 Idaho 548, 323 P.2d 611 (1958) (same); *In re Di Bella's Estate*, 199 Misc. 847, 100 N.Y.S.2d 763 (N.Y.Sup.Ct.1950) (same). Indeed, the evidence is sufficient "[i]f there is any evidence of probative force that either party survived the other." *White v. Taylor*, 155 Tex. 392, 286 S.W.2d 925 (1956) (citations omitted); *see also In re Moore's Will*, 14 Misc.2d 85, 178 N.Y.S.2d 1000 (N.Y.Sup.Ct. 1958) (evidence is sufficient if inference of survivorship can reasonably and fairly be drawn from it); *Prudential Ins. Co. v. Spain*, 339 Ill.App. 476, 90 N.E.2d 256 (1950).[11] The evidence in the administrative record satisfies this standard and supports LINA's finding and the court thus accepts that finding. It follows, then, that even if not preempted, Mississippi's Simultaneous Death Law, which, again, would govern only in the event of *simultaneous* deaths, would not apply and thus would not bear on LINA's distribution of benefits under the policies.

Plaintiffs maintain, additionally, that LINA's factual decision regarding Mary's death was contrived specifically for the purpose of covering up its mistake in distributing the insurance proceeds to Mary's estate. To accept this position, though, would be tantamount to concluding that there was not sufficient evidence available to LINA to support its conclusion that Mary survived the other occupants. As already noted, this court considers that LINA's finding was supported by the evidence.[12]

While the court assumed in the preceding discussion, for the sake of argument, that

9. Plaintiff contends that this issue cannot be resolved by the court but must be reserved for jury determination since the issue is disputed by the parties. ERISA, however, does not provide for a jury trial, *Calamia v. Spivey*, 632 F.2d 1235 (5th Cir.1980), and instead, these types of factual determinations are made by the court. Here, the court has before it the entire administrative record and there is no dispute that it contains all the evidence that was before LINA when it made its decision respecting the payment of benefits under the policies at issue.

10. Mississippi's Simultaneous Death Law is patterned on the Uniform Simultaneous Death Act, which has been adopted in most states.

11. "Simultaneous" is not specifically defined in the statute, but case law establishes that the term is to be given its "ordinary and accepted meaning," i.e., "occurring at the same time." *Estate of Villwock v. Olinger*, 142 Wis.2d 144, 418 N.W.2d 1 (1987) (*quoting* Webster's Third International Dictionary, at 2122); *see also Smith v. Smith*, 229 Ark. 579, 317 S.W.2d 275 (1958) (simultaneous means "at the same time" under Simultaneous Death Act).

12. Further, it appears that LINA's conclusion that the deaths were not simultaneous was reached well in advance of the distribution of proceeds, contrary to plaintiffs' position. From the beginning, as evidenced by its January 14, 1992 letter to attorney Oates, LINA expressed concern as to whether or not the deaths were simultaneous, since this could affect the distribution of proceeds to the estate. Only after it received the affidavits of Bobby and Oscar Stevens did LINA agree to distribute the proceeds to Mary's estate.

Plaintiffs also contend that LINA's finding should be rejected since the evidence received was biased, and because LINA conducted no independent investigation. The court finds neither contention persuasive. Although the affiants were Mary's relatives, they had no financial interest in the insurance proceeds, and the court cannot conclude that consideration of these affidavits was an abuse of discretion. The court also cannot conclude that an independent investigation was necessary, particularly when plaintiffs have not identified or even suggested that any evidence exists which would contradict or undermine LINA's finding.

Mississippi's Simultaneous Death Law was exempt from ERISA preemption, the court considers it likely that this law is preempted, though the court need not finally resolve the issue. However, if, as the court is inclined to hold, preemption does apply, the result would be the same. So far as the court is able to discern from the administrative record and the pleadings, the policy provision upon which LINA made the decision to pay the disputed benefits to Mary's estate provides that "Life Insurance benefits paid on account of a covered dependent will be paid to the employee, *if she is living.* If not, we will pay the dependent's Estate" (emphasis added). Plaintiffs admit that if ERISA does preempt the Simultaneous Death Law, then this provision applies, and that if, as LINA found, Mary outlived her dependents, then, in accordance with this policy provision, her estate would be entitled to the proceeds.[13] Because the court has concluded that LINA did not abuse its discretion in finding that Mary McCurtis outlived her dependents, McCurtis, Sr. and McCurtis, Jr., it follows, in view of plaintiffs' admission, that the death benefits for McCurtis, Sr. and McCurtis, Jr. were properly paid to Mary's estate.

### Conclusion

Based on the foregoing, it is ordered that defendant's motion for summary judgment is granted.

A separate judgement will be entered in accordance with Rule 58 of the Federal Rules of Civil Procedure.

SO ORDERED.

---

**13.** Plaintiffs have specifically admitted that if Mary McCurtis was the last to perish in the automobile accident, they would have no rightful claim to the insurance proceeds. In view of this admission, there is no issue before the court concerning LINA's interpretation of this plan provision.