# Jeanne W. BURNETT *v.* FIRST COMMERCIAL TRUST COMPANY

96-994                                             939 S.W.2d 827

Supreme Court of Arkansas
Opinion delivered March 3, 1997

*Dan McGraw*, for appellant.

*Richard Slagle*, for appellee, First Commercial Trust Co., N.A.

W.H."DUB" ARNOLD, Chief Justice. This is a case involving a testamentary trust. The issue is whether the will containing the trust is ambiguous in its disposition of the testatrix's property. We hold that the will is not ambiguous, and that the chancellor erred in receiving parol evidence on the question of the testatrix's intent. We therefore reverse and remand.

The testatrix, Lois E. Burnett, died on June 10, 1994. At the time of her death, her family consisted of her brother, James Burnett, her nephew, William Spencer, Jr., and Spencer's six children. Mrs. Burnett's will provided for her funeral expenses and made several small, specific bequests. The will then disposed of the remainder of her estate as follows:

> I give, devise, and bequeath all the rest and residue of my estate, whether real, personal, or mixed, and of whatever kind or nature, wheresoever located and whenever acquired to Arkansas Bank and Trust [now First Commercial Trust Company] in Trust for my friend, Flournoy Adkins, during his lifetime.
>
> The terms of said trust being as follows:
>
> 1. Flournoy Adkins is to receive my automobile at the time of my death for his use and benefit.
> 2. Flournoy Adkins has the right and use of my home located as follows:

> [description of the property]   .
>
> Upon the death of Flournoy Adkins, the Trustee shall distribute the above described land as follows: one-half interest to my nephew, William Spencer, Jr., and one-half interest to his six children. . .in equal shares, share and share alike.

As can be seen, the will instructs the trustee that the *realty* contained in the trust corpus is to be distributed upon the death of Flournoy Adkins. However, it makes no provision for the distribution of the *personalty* contained in the trust corpus. The distinction is important. At the time of Mrs. Burnett's death, the real property in the trust was valued at $25,000.00; the personal property was valued at $194,702.14.

On May 3, 1995, First Commercial brought an action for declaratory judgment seeking instructions on how to distribute the personalty in the trust upon Flournoy Adkins's death. First Commercial claimed that the trust's failure to expressly provide for such distribution was the result of a clerical error. The complaint asked that the personalty be distributed in the same manner as the realty: one-half to William Spencer, Jr., and one-half to the Spencer children. James Burnett, who had received no bequest in the will, answered the complaint. He contended that any part of the trust corpus lacking specific directions for distribution should pass through the laws of intestate succession. The chancellor found that the silence of the will regarding the distribution of the personalty created an ambiguity. He thus allowed the use of parol evidence to explain the omission.

Bruce Garrett, the attorney who prepared Mrs. Burnett's will, testified that Mrs. Burnett came to him in 1992 to change her will. Garrett testified that the will's failure to provide for the disposition of the trust's personal property was the result of a clerical error. The provision which read, "upon the death of Flournoy Adkins, the Trustee shall distribute the above described *land*" should have read, "shall distribute the above described *land and personalty*". Garrett further testified that Mrs. Burnett had decided to cut James out of the will and to provide for her friend, Flournoy Adkins. The previous will, which Mrs. Burnett executed in 1990, had bequeathed the bulk of her estate to James

Burnett and William Spencer, Jr. A copy of Mrs. Burnett's old will reflecting the deletions, additions, and handwritten notes of Garrett and his secretary, was introduced into evidence. The exhibit shows that the provisions which were made for James Burnett in 1990 were marked through. A witness who was experienced in the use of shorthand testified that some of the secretary's notes on the will could be translated as directing the personal property to be distributed to the residual beneficiaries upon Adkins's death.

The chancellor, after hearing the evidence, found that the testatrix intended to bequeath all trust property, including personal property, to William Spencer, Jr., and his six children, upon the death of Flournoy Adkins. Jeanne Burnett, as special administratrix of her late husband's estate, brings this appeal.

■ ■ Ordinarily, the intention of the testator is to be gathered from the four corners of the instrument itself. *Armstrong v. Butler*, 262 Ark. 31, 553 S.W.2d 453 (1977). Extrinsic evidence may be received on the issue of the testator's intent, but only where the terms of the will are ambiguous. *In re Estate of Conover*, 304 Ark. 268, 801 S.W.2d 299 (1990). The language of Mrs. Burnett's will unequivocally expresses the intention that, upon the death of Flournoy Adkins, the *land* contained in the trust shall be distributed. No mention is made of her substantial personal estate. The question we must answer is whether Mrs. Burnett's failure to dispose of her entire estate creates an ambiguity. An ambiguity has been defined as an indistinctness or uncertainty of meaning of an expression used in a written instrument. *Smith v. Smith*, 229 Ark. 579, 317 S.W.2d 275 (1958). Such a definition contemplates the need for interpretation of terms actually used in the will. As such, it does not encompass the situation in which a testatrix does not dispose of a portion of her estate. We have recognized that oral evidence should not be used to supply terms in a writing which are wholly absent. *Hickman v. Trust of Heath, House & Boyle*, 310 Ark. 333, 835 S.W.2d 880 (1992).

In a similar case from Texas, *In re Estate of Hunt*, 908 S.W.2d 483 (Tex. App. 1995), a testatrix failed to completely dispose of a remainder interest in a trust. The court said the following:

It is true that Marguerite Hunt failed to completely dispose of her estate in the Will. It is also true that upon reading the entire will it is reasonable to presume that it was Marguerite Hunt's intention to award the remainder interest in the Delph Trust to the Salvation Army. But she did not say so. And we are prohibited from speculating as to what Marguerite Hunt would have done had she completed her will. A court may not rewrite a will or add provisions under the guise of construction of the language of the will in order to reflect some presumed intention of the testatrix. Even though there is a strong presumption against intestacy, the presumption does not arise when the testatrix fails, through design or otherwise, to make a complete disposition of her property. (Citations omitted).

■ Our own case law has espoused much the same philosophy — that the paramount objective in interpreting a will is the intention of the testator as expressed in the language of the will, and that it is presumed that a testatrix knows the contents of the will she executes. *Chlanda v. Estate of Fuller*, 326 Ark. 551, 932 S.W.2d 760 (1996); *Armstrong v. Butler, supra*; *Heirs of Mills v. Wylie*, 250 Ark. 703, 466 S.W.2d 937 (1971). The *Heirs of Mills* case is particularly enlightening. There, Mr. Mills's will contained a number of contingency provisions, including a provision that bequeathed most of his estate to a nephew and a sister-in-law, should Mills and his wife die in a "common disaster". However, the will failed to provide for the situation in which Mrs. Mills might predecease her husband. In fact, she did predecease him. Mr. Mills's heirs (who were not provided for in his will) filed suit, contending that, since the will made no bequest in the event Mrs. Mills predeceased her husband, Mr. Mills's estate should pass through the laws of intestate succession. In holding that the will contained no ambiguity, we said the following:

actually our holding in this case may not be in accord with the actual intention of the testator — existing in his mind — but certainly it is in accord with long established law that the court's finding shall be based on the intention of the testator — *as expressed by the language of the will.*

*Id*. at 704, 466 S.W.2d at 938.

First Commercial argues that our acceptance of the appellant's argument will result in a partial intestacy. In response to a similar contention, we said the following in *Chlanda v. Estate of Fuller, supra*:

> It is correct to state that there is a presumption in the rules of construction that 'a person who takes the time and effort to make a will does not desire partial intestacy'. *Kidd v. Sparks*, 276 Ark. 85, 633 S.W.2d 13 (1982). However, a probate court should not resort to the rules of construction unless the intent of the testator, as shown by his express words, is in doubt.

326 Ark. at 555, 932 S.W.2d at 763.

The express language of Mrs. Burnett's testamentary disposition reflects the unambiguous intention that, upon the death of Flournoy Adkins, the land, and no other property contained in the trust corpus, shall pass under the will. We must therefore reverse and remand this case with instructions to enter orders consistent with this opinion.

Reversed and remanded.

GLAZE and THORNTON, JJ., dissent.

RAY THORNTON, Justice, dissenting. This is an appeal from an order of the Garland County Chancery Court's finding that an ambiguity exists in the provisions included in the Last Will and Testament of Lois E. Burnett, which requires judicial interpretation of the conflict and repugnance between the provisions of the instrument. Based upon that finding of ambiguity, the Chancellor considered evidence and resolved the ambiguity by requiring the disposition of all property, real, personal, and mixed, as follows: one-half to Ms. Burnett's nephew, Willie Spencer, and one-half to Mr. Spencer's children, upon the death of Flournoy Adkins, for whose benefit all of testatrix's property, real, personal, and mixed, was placed in trust for his life. Appellant, Jeanne W. Burnett, the widow of the testatrix's brother, contends that upon Mr. Adkins's death, all personal property in the trust must be distributed under the laws of intestate succession. I would affirm the order of the Chancellor.

While there are numerous granting clauses in the will, all of the internally inconsistent provisions are contained in Section III of the will. Section III B reads as follows:

> B. Provided, however, in the event my friend, Flournoy Adkins, should predecease me, co-decease with me, or in the event that we should die at the same time or as a result of a common accident or catastrophe, then and in that event, I give, devise, and bequeath all the rest and residue of my estate as follows: one-half (½) to my nephew, William Spencer, Jr., and one-half (½) to my nephew's six children, Billy Spencer, Jasen Spencer, Adam Spencer, Mary Fagan, Ann Griffen, and Elizabeth Forbes, in equal shares, share and share alike.

In the event Flournoy Adkins survives Ms. Burnett's death, Section III A. establishes a trust for his benefit during his lifetime, with the following provision:

> A. I give, devise, and bequeath all the rest and residue of my estate, whether real, personal, or mixed, and of whatever kind or nature, wheresoever located and whenever acquired to Arkansas Bank and Trust as Trustee in Trust for my friend, Flournoy Adkins, during his lifetime.

Within these two provisions, there is no ambiguity. Ms. Burnett's estate goes to her nephew and his children if Mr. Adkins does not survive her, but if he does survive her, he is to have a life interest in all the property placed into trust.

However, the instrument contains an ambiguity in directing the trustee's distribution of the estate following Mr. Adkins's death. From the four corners of the instrument, it is apparent that Ms. Burnett intended for all of her property to be distributed in accordance with her will, and that following her death and the death of her friend, Flournoy Adkins, the property was to be distributed to her nephew and his children. Unfortunately, ambiguity arises because the instructions to the trustee fail to clearly specify that "personal" property should be distributed *to anyone* upon Mr. Adkins's death, providing only that upon the termination of the trust for the benefit of Mr. Adkins, the "land" shall be distributed to the nephew and his children.

Chancellor Switzer correctly finds that placing all the property in the trust, without addressing the distribution of personal

property, creates an ambiguity. He states that "there is a conflict and repugnance between the provisions such as to require judicial interpretation."

As we consider whether a potential flaw in the establishment of the trust gives rise to an ambiguity requiring judicial interpretation, we should be reminded of these principles:

1) The testatrix did not want to die intestate, but intended all property to pass under her will. Whenever possible, wills should be interpreted so as to give effect to the intent of the testator and avoid a partial intestacy. *Lockhart v. Lyons*, 174 Ark. 703, 706, 297 S.W. 1018 (1927); *see also Chlanda v. Estate of Fuller*, 326 Ark. 551, 555, 932 S.W.2d 760 (1996) (quoting *Kidd v. Sparks*, 276 Ark. 85, 90, 633 S.W.2d 13, 16 (1982)).

2) Here, it is not necessary to look beyond the four corners of Section III to determine that an ambiguity exists requiring interpretation. We should remember that we are addressing an ambiguity in a trust provision established by the will, which also provides in the same section for the distribution of all the estate to her nephew and his children upon Mr. Adkins's death, if that occurs before the death of the testatrix. If the ambiguity is not resolved, the trust will fail. We are not called upon to reform the will, but to interpret ambiguous instructions to trustees managing a trust clearly established by the will in order to resolve the conflict and repugnance between provisions of section III of the instrument itself.

In the circumstances of this case, it was appropriate for the Chancellor to consider evidence to resolve the ambiguity and to determine what interpretation effectuates the testatrix's intent in the establishment of the trust. In reaching this issue we follow the principles of *Galloway v. Darby*, 105 Ark. 558, 151 S.W. 1014 (1912), *Lockhart v. Lyons*, 174 Ark. 703, 297 S.W. 1018, and *Brunk v. Merchants National Bank*, 217 Ark. 499, 230 S.W.2d 932 (1950), recognizing the presumption that the testatrix intended for all of her property to be distributed under the will.

In *Lockhart v. Lyons*, 174 Ark. 703, 297 S.W. 1018, this court stated:

The true rule in the construction of wills, which can be said to be paramount, is to ascertain or arrive at the intention of the testator from the language used, giving consideration, force and meaning to each clause in the entire instrument. . . .

A testator is presumed to intend to dispose of his entire estate, and it must be borne in mind, in the construction of wills, that they are to be so interpreted as to avoid partial intestacy, unless the language compels a different construction . . . .

*Id.* at 706, 297 S.W. at 1019.

In *Galloway v. Darby*, 105 Ark. 558, 151 S.W. 1014, we stated:

The presumption against intended intestacy leads to a liberal, rather than to a restrictive, construction of the residuary clause, in the will, in order to prevent partial intestacy. . . . The rule is that the testator's intention is to be ascertained from the whole will. . . . *Hence it follows that language which in a general or residuary clause may not alone be sufficiently conclusive to dispose of all the property of the testator may have its meaning enlarged to correspond with an intention shown in the introductory clause.*

*Id.* at 572–573, 151 S.W. at 1020 (emphasis added).

These cases were cited in *Brunk v. Merchants National Bank*, 217 Ark. 499, 230 S.W.2d 932 (1950), where we concluded that the will disposed not only of the personal property described in the will, but also the real estate that was not specifically mentioned in the will. We then stated:

We have concluded, from a consideration of the whole will, that the Chancellor correctly held that the testator intended to dispose of his entire estate. The decedent's real estate passed under the residuary clause to the charities named therein.

*Id.* at 502, 230 S.W.2d at 934.

Appellant relies upon our decision in *Mills' Heirs v. Wylie*, 250 Ark. 703, 466 S.W.2d 937 (1971), in which we cited *Smith v. Smith*, 229 Ark. 579, 317 S.W.2d 275 (1958), as follows:

It is well settled law in this state, so well settled as to require no citation of authority, that where there is no ambiguity, or no

> conflict or repugnance between the provisions of the will, judicial interpretation or construction is not required.

*Id.* at 707, 466 S.W.2d at 940. In *Mills' Heirs*, we also state the rule that "where the meaning of the language is *not ambiguous*, testimony as to the testator's intention is 'inadmissible'. . ." and then concluded: "Since we find that there was no ambiguity, there is no necessity to discuss the testimony." *Id.* at 708, 466 S.W.2d at 940 (emphasis added).

Unlike the will in *Mills' Heirs*, which had no internal inconsistencies, here we have an internally inconsistent testamentary trust, the ambiguous language of which would devise and bequeath the testatrix's property to her nephew and his children if her friend predecease her, but provided no instruction to the trustee as to the disposition of her personal property after her friend's death, should he survive her. This internal ambiguity requires that evidence of the testatrix's intent be admitted to resolve the conflict between provisions of the instrument.

I believe that the instrument must be looked at as a whole; that from the four corners of the instrument, it is apparent that an ambiguity exists; that evidence of the testatrix's intent was required to resolve the ambiguity; and that the Chancellor's rulings and order should be sustained. I would affirm the decision.

GLAZE, J., joins in this dissent.