Walter BUFORD *v.* Jim ALDERSON and Donna Alderson, d/b/a Alderson Lumber Company

CA 97-1037                                                965 S.W.2d 802

Court of Appeals of Arkansas
Division IV
Opinion delivered April 1, 1998

*Butler, Hicky & Long*, by: Fletcher Long, Jr., for appellant.

*Easley, Hicky, Cline & Hudson*, by: *Preston G. Hicky*, for appellees.

JOHN MAUZY PITTMAN, Judge. This case involves the sale of standing timber by appellant Walter Buford to appellees Jim Alderson and Donna Alderson, d/b/a Alderson Lumber Company. The timber was located on eighty acres of land owned by appellant Buford. Pursuant to the terms of the sale agreement, Alderson had one year from September 22, 1994, to harvest the timber. Buford appeals the amended judgment that the Cross County Chancery Court entered against him in which the court awarded Alderson damages of $35,700.90 for the timber that his company was not able to harvest. We affirm the chancery court's amended judgment.

Below, the chancery court prepared a memorandum opinion setting forth its findings of fact. In this opinion, the chancery court summarized the material facts of this case, in pertinent part, as follows:

> The facts are basically undisputed. In a nutshell, Alderson Lumber Company [bought] the timber off 80 acres of land owned by Mr. Buford. The timber deed granted to Alderson Lumber Company a period of one year to remove the timber. The timber deed was not recorded. Mr. Buford sold the 80-acre tract before the one-year period had expired. The purchaser of the land ordered Alderson Lumber Company off the land. Alderson Lumber Company filed suit against Mr. Buford for breach of contract and prayed for its lost profits as damages . . . .

Alderson Lumber Co. employees began harvesting the trees around October 1, 1994. They worked in the woods until approximately December 1st when the winter rains forced them from the woods. They started back to work on the 80-acre tract in the spring of 1995.

On April 14, 1995, Mr. Buford, along with his co-tenants, sold the 80-acre tract to Mr. Willard G. Burks and his wife. Mike Alderson [appellee Alderson's son] first learned of the sale when Mr. Burks told him to leave the woods. Mr. Buford never gave notice to Mike Alderson nor Alderson Lumber Company that the land had been sold. He never asked them when the timber cutting would be finished. Mr. Buford testified that he thought the timber cutting was finished when he received the [purchase price] because Mike Alderson had told him that he could not pay him until the logs were harvested. Mr. Buford was paid on or about November 16, 1994.

On appeal, Buford presents a very narrow allegation of error.[1] According to Buford, the chancery court erred in characterizing the transaction at issue as a contract for the sale of timber. Buford asserts that the transaction was not a contract but was, instead, his delivery of a deed to the timber to appellee Alderson in return for $17,200; therefore, he argues, he is not liable to appellee Alderson for breach of a contract to sell the timber at issue because there was no contract between them to be breached. We note that the deed by which Buford conveyed the timber to Alderson contained the following warranty provision, "that [Buford], his heirs, successors and assigns, will warrant and defend unto the Grantee, his heirs, successors and assigns, the title and quiet possession to said timber and trees and to the land whereon they are located, against the claims of all persons whomsoever." We note further that Buford conveyed the eighty acres at issue to the Burkses by a warranty deed that did not make any mention of his previous sale of the timber on the acreage to appellee Alderson.

Assuming, without deciding, that Buford's characterization of his transaction with appellee Alderson as the delivery of a timber deed is correct, we conclude that the chancery court did

---

[1] We note that no argument has been made concerning the application or effect of Ark. Code Ann. § 4-2-107 (Repl. 1991), or of Ark. Code Ann. § 4-2-312 (Repl. 1991).

not err in awarding damages to appellee Alderson. The chancery court's award of damages was correct, given the warranty provision of the timber deed Buford delivered to Alderson and given the Arkansas Supreme Court's case of *Koonce v. Fordyce Lumber Co.*, 123 Ark. 85, 184 S.W. 440 (1916). *Koonce* is on all fours with the material facts of this case.

In *Koonce*, the Arkansas Supreme Court stated:

> The [Fordyce] lumber company purchased the timber on the lands in question in 1908 from appellants and the same was conveyed to them by a warranty deed granting twenty years in which to remove the timber. On July 11, 1913, appellant Koonce conveyed his one-half undivided interest in the lands to appellant, McKee, by deed without reserving or excepting the timber therefrom. On February 13, 1914, McKee conveyed to R.S. Treadway and W.J. Key without any exception or reservation of the timber and the deed was recorded on the 28th of February. This deed contained some lands on which the right of the lumber company to cut timber had expired, and a lien was retained therein to secure the unpaid purchase money and subsequently on March 23, 1914, McKee and wife executed a quit claim deed to said grantees releasing the vendor's lien. On March 19, 1914, Treadway and Key conveyed all the standing timber on the lands to Cox and Richardson, who in the suit of the lumber company against them, were held to be innocent purchasers thereof, and entitled to the timber, after which decree appellee company instituted this suit. Its deed to the timber was not recorded until April 13, 1914.

> Appellants first demurred to the complaint for misjoinder of parties and upon the demurrer being overruled, answered admitting the making of the conveyances of the timber and lands at the time alleged and stated that the deed from Koonce to McKee of the one-half interest in the land was not intended to and did not convey the timber, which both parties knew belonged to the lumber company and was only intended to convey the lands, that therefore no reservation or exception of the timber was made therein; that upon the making of the deed to Treadway and Key, it was understood between the parties that the timber upon the lands was not conveyed although no exception or reservation was contained in the deed; that said grantees knew that the lumber company was the owner of the timber.

They denied any liability to the lumber company for the loss of the timber and alleged that if any damage or loss was suffered, it was on account of the failure of the company to record its deed to the timber, which they supposed had been recorded. The timber conveyed to the lumber company by appellants' deed and lost to them by their subsequent conveyances of the land without reservation or exception of the timber as set out, was shown to be worth the sum of $3,500. Koonce and McKee testified denying any intention to wrong the lumber company or deprive it of the timber sold to it by the later conveyances of the land, each testifying that they notified the grantees down to and including Treadway and Key that the timber belonged to the lumber company and did not pass with the conveyance of the land. They also stated that they had no information that the timber deed was not recorded and in fact supposed it had been recorded before making such conveyances.

. . . .

. . . . Their [appellants'] testimony also shows that they had no intention in fact or rather did not make the conveyance of the land to the last grantees for the purpose of defrauding the lumber company of the timber already conveyed to it as they supposed its deed was of record and would protect its interest. However, this may be, it is unquestionably true that the conveyance of the land conveyed the timber standing thereon and that this fact was well known to appellants in making the deeds thereto. They also knew that their conveyances of the land contained no reservation or exception of the timber thereon from the grant, and were chargeable of course with knowledge that the conveyances of the land without such reservation or exception of the timber, carried the timber and would have effect to defeat their prior conveyances of the timber to the lumber company if said timber conveyance was not of record and the lands were afterwards granted to a *bona fide* purchaser without notice of it. Their affirmative action in making such conveyances without proper exceptions and reservations to protect their grantee of the timber whose deed might not have been and was not recorded, had the same effect to defeat its right and defraud the grantee of the timber as though they had intended the result effected, and for which they must be held answerable. They were owners as tenants in common, each of an undivided half of the lands upon which the timber stood, and conveyed the timber thereon to the lumber company by a warranty deed granting twenty years time for its removal, and their

warranty was broken, and their grantee appellee, deprived of the timber by a *bona fide* purchaser through their subsequent conveyances of the lands within said time without reservation or exception of the timber, for the loss of which they became liable. Whether the action be regarded arising out of contract or sounding in tort, the effect is the same, since the damage would not have resulted but for their subsequent conveyances of the land without reservation or exception of the timber . . . .

*Koonce v. Fordyce Lumber Co.*, 123 Ark. at 85-87, 89-90.

For the reasons set forth by the Arkansas Supreme Court in *Koonce*, we affirm the amended judgment entered by the Cross County Chancery Court in this case.

Affirmed.

ROGERS and NEAL, JJ., agree.