2012 Ark. 200

**Charles T. RODGERS, Appellant,**

v.

**Burt RODGERS and Gary Morgan, Appellees.**

No. 11–1020.

Supreme Court of Arkansas.

May 10, 2012.

David R. Bridgforth, Ramsay, Bridgforth, Robinson and Raley LLP, Pine Bluff, James R. Dover, Wright, Lindsey & Jennings LLP, Little Rock, for Appellant.

C. Mac Norton, Brockman, Norton & Taylor, Pine Bluff, for Appellee.

JIM GUNTER, Justice.

Appellant appeals the circuit court's order finding that proceeds from the sale of timber, which was harvested from land that was specifically devised in a will, should be considered part of the decedent's residuary estate. On appeal, he urges this court to reverse the circuit

court and hold that if property that is the subject of a specific devise is sold by an attorney in fact at a time when the testator is incompetent, and the testator does not regain testamentary capacity before his or her death, an ademption of the specific devise does not take place as to the unexpended, identifiable proceeds of the sale. We have assumed this case because it involves a significant issue needing clarification or development of the law; therefore, we have jurisdiction pursuant to Ark. Sup.Ct. R. 1–2(b)(5). We agree with appellant and reverse.

On April 16, 2009, appellant filed a petition for probate of will and appointment of an executor in the Cleveland County Circuit Court. The decedent, Mary Rodgers, passed away on April 11, 2009, and appellant was nominated in Mary's will to serve as executor. The will, dated November 9, 1987, divided Mary's real property into four parcels and devised the parcels as follows: Parcels 1 and 2 to appellant; Parcel 3 to appellee Burt Rodgers; one-half of Parcel 4 to appellee Gary Morgan; and one-half of Parcel 4 to Nancy Morgan, Gary's sister. An order admitting the will to probate and appointing appellant as executor was entered that same day, April 16.

Appellee Morgan filed a petition to challenge Mary's will and appellant's authority as executor, asserting that Mary had executed two codicils to her will on May 15, 2008. Attached to the petition were the first codicil, in which Mary stated her desire to change the executor of her last will and testament from appellant to appellee Morgan, and the second codicil, in which Mary amended the description of Parcel 2 to exclude the portion of land on which her house was located and stated that she wished to give that portion of land to appellee Morgan and Nancy Morgan. The second codicil also eliminated thirteen of the distributees of the residual estate and increased appellee Morgan's and Nancy Morgan's shares of the residual estate to twenty-five percent each. After a hearing on the matter, however, the court found that at the time the codicils were executed, the decedent was so demented that she did not and could not understand their import and significance; that the preparation and execution of the two codicils were the products of undue influence by appellee Morgan and his wife, Renea Morgan; and that the decedent lacked the requisite testamentary capacity to execute the codicils. Thus, appellee Morgan's petition to have the codicils admitted to probate was denied.

On September 18, 2009, appellant, in his capacity as executor, filed a motion to construe the will. The motion explained that at the time the will was executed, Mary owned the fee simple title to several tracts of land containing valuable timber referred to as the "timbered tracts." Two timbered tracts in particular, Tracts 1 and 2, are located respectively in Parcels 1 and 2, which were devised to appellant in Mary's will. On September 15, 2008, appellee Morgan, acting as Mary's attorney in fact, executed a timber deed conveying all merchantable hardwood and pine trees in Tract 1 to Silvicraft, Inc., for $36,552.[1] On October 9, 2008, appellee Morgan conveyed by timber deed all of the pine and hardwood trees measuring 24 inches in diameter or larger in Tract 2 to two different companies, for a total sale price of $261,286. A portion of the proceeds from

1. Appellee Morgan acted pursuant to a Durable Financial Power of Attorney that was executed by the decedent on June 9, 2006. The validity of the power of attorney is not in dispute in this case. There is also no dispute among the parties that at the time the timber was sold, the decedent was suffering from advanced dementia and was not competent.

these sales was used for Mary's continued care and maintenance; however, another portion was transferred by appellee Morgan to Nancy Morgan by placing it in a payable-on-death account on which Nancy Morgan was the at-death beneficiary. The remaining portion of the proceeds became an asset of Mary's estate at her death. Based on these facts, appellant requested that the court decide whether an ademption had occurred.

On October 11, 2010, a hearing on the motion to construe the will was convened, but the court found it would be helpful for the parties to submit briefs before the court heard testimony on the issue, so the matter was continued. Appellant, in his individual capacity, filed a pre-trial brief asserting that an ademption did not occur as a result of the timber sales and that the proceeds of the timber sales should pass pursuant to the specific devise of the real property from which the timber was sold. Appellant argued that while the sale of the timber did result in a change in the form of the property, there was no intention shown on the part of the testatrix with respect to the issue of ademption other than the will. Appellant also cited Ark. Code Ann. § 28-24-102, entitled "Sale of property devised by ward not an ademption," which provides:

> In case of a guardian's sale or other transfer of any real or personal property specifically devised by a ward who was competent to make the will, but was incompetent at the time of the sale or transfer and never became competent thereafter, so that the devised property is not contained in the estate at the time of the ward's death, the devisee may, at his or her option, take the value of the property at the time of the ward's death with the incidents of a general devise or take the proceeds thereof with the incidents of a specific devise.

Ark.Code Ann. § 28-24-102 (Repl.2012). Appellant argued that the principle behind this statute should also be applied in the case at bar and that an attorney in fact should not have the ability to frustrate the testamentary plan of the principal. Appellant also filed a brief in his capacity as the executor that made similar arguments against a finding of ademption.

Appellee Burt Rodgers filed his own response to the executor's brief in support of the motion to construe the will and argued that this case was not an ademption case because the land left to appellant is still in existence, and he will receive that land once the probate is concluded. Appellee Morgan, along with Renea Morgan and Nancy Morgan, also filed a brief arguing that there was no ademption issue because appellant will still receive the real property devised to him by the will. Appellant, in his capacity as executor, filed a reply and argued that appellees' argument that this was not a case of ademption ignored the fact that the parcels of land that had been devised to him were not identical to the land as presently situated.

A hearing on the matter was held on January 31, 2011, at which the court, after hearing further arguments from counsel, took the matter under advisement. In a letter opinion filed May 25, 2011, the court declined to extend Arkansas's non-ademption statute, Ark.Code Ann. § 28-24-102, to include durable powers of attorney and concluded that

> [w]hether the Court finds that there has been a partial ademption, that is that the timber was adeemed, or that there has been no ademption because the executor takes this land as a devise, is really not the point. The point is what happens to the proceeds from the sale of the timber. In either case, it would become part of the residuary estate.

On June 27, 2011, a written order was entered that incorporated these findings. Appellant, in his capacities as executor and an interested party, filed a notice of appeal from this order on July 21, 2011.

■ Our standard of review in probate cases is well settled. This court reviews probate proceedings de novo on the record, but it will not reverse the decision of the circuit court unless it is clearly erroneous. *Seymour v. Biehslich*, 371 Ark. 359, 266 S.W.3d 722 (2007). Furthermore, while we will not overturn the probate judge's factual determinations unless they are clearly erroneous, we are free in a de novo review to reach a different result required by the law. *Standridge v. Standridge*, 304 Ark. 364, 803 S.W.2d 496 (1991).

This court has previously explained the general law of ademption:

The distinctive characteristic of a specific legacy is its liability to ademption. If the identical thing bequeathed is not in existence, or has been disposed of so that it does not form a part of the testator's estate, at the time of his death, the legacy is extinguished or adeemed, and the legatee's rights are gone. The rule is universal that in order to make a specific legacy effective the property bequeathed must be in existence and owned by the testator at the time of his death, and the nonexistence of property at the time of the death of a testator which has been specifically bequeathed by will is the familiar and almost typical form of ademption.

*Mee v. Cusineau*, 213 Ark. 61, 64, 209 S.W.2d 445, 447 (1948). We held in *Williamson v. Merritt*, 257 Ark. 489, 519 S.W.2d 767 (1975), that the courts generally look with disfavor upon the ademption of a specific legacy; however, in construing a will to determine whether there has been an ademption of a specific legacy, the intention of the testator is the controlling factor, the same as in the construction of all wills. In our most recent case addressing ademption, *Estate of Mayberry v. Mayberry*, 318 Ark. 588, 886 S.W.2d 627 (1994), we reiterated that the primary aim in ademption cases is to determine and give effect to the testator's intention.

■ The instant case, however, presents an issue of first impression for this court, because it was not an act of the testatrix that may or may not have caused an ademption, but was instead an action taken by the testatrix's attorney in fact at a time when the testatrix was incompetent. The testatrix never regained testamentary capacity following the sale of the timber, so she never had an opportunity to revise her will or otherwise address the situation. Because of these circumstances, appellant argues on appeal that the only evidence of the testatrix's intent with respect to the timber comes from the will itself, in which the land was devised to appellant, and the attorney in fact should not be allowed to frustrate that intent. Thus, appellant contends, the timber should not be found to be adeemed, and he should receive the identifiable proceeds from the sale of the timber.[2]

In support of his position, appellant cites to cases from other jurisdictions, most no-

---

2. Contrary to the dissent's assertion, a specific bequest of the timber is not required, as the conveyance of land conveys the timber standing thereon, unless there is a reservation or exception of the timber. *See Koonce v. Fordyce Lumber Co.*, 123 Ark. 85, 184 S.W. 440 (1916) (affirming an award of damages to the grantee of standing timber after the grantor subsequently conveyed the land to a third party without reservation or exception of the timber); *see also Buford v. Alderson*, 61 Ark. App. 156, 965 S.W.2d 802 (1998) (applying *Koonce*).

tably *In re Graham's Estate,* 216 Kan. 770, 533 P.2d 1318 (1975), which presented a similar fact situation to the case at bar. *Graham* involved a claimed ademption of a specific devise of real estate where, during the lifetime of an incompetent testator, his attorney in fact, acting on his behalf under a power of attorney, sold the real estate to provide funds to support the incompetent testator. In deciding whether an ademption of the specific devise had occurred, the Kansas Supreme Court discussed two distinct schools of thought on the issue: the identity theory and the intention theory. Under the identity theory, a conveyance of specifically devised property by a guardian or conservator of an incompetent testator results in an ademption as a matter of law. Under the intention theory, which the court indicated was the majority view in the United States, if the property that is the subject of the specific devise is sold by another person without the knowledge and intention of the testator, an ademption of the specific devise does not take place as to the unexpended proceeds of the sale. After observing the logic in applying the same legal principles to a conveyance by an attorney in fact as are applicable to acts of a guardian or conservator, the court held that

where following execution of his will a testator becomes incompetent and his conservator or attorney-in-fact acting under a power of attorney sells the property which is the subject matter of a specific devise and a portion of the proceeds from the sale of the property remains in the hands of the conservator or attorney-in-fact at the time of the testator's death, an ademption ordinarily does not take place. The unexpended proceeds of the sale are impressed with a trust in the hands of the executor and on distribution of the estate should be paid to the devisee in accordance with the specific devise contained in the will.

We adopt this rule not only because of the fact that it represents the rule which is followed in the overwhelming majority of the jurisdictions in this country but also because we consider it better reasoned rule and more in line with out prior decisions which give supreme importance to the intention of a testator in determining how his property should be distributed on his death.

*Id.* at 1323–24. Appellant asserts that the prior cases of this court also stress the importance of the intention of the testator and urges this court to adopt the reasoning applied in *Graham.*

Appellant also contends that appellees cannot rely on Ark.Code Ann. § 28–68–202 (Repl.2004), which provides:

All acts done by an attorney in fact pursuant to a durable power of attorney during any period of disability or incapacity of the principal have the same effect and inure to the benefit of and bind the principal and his successors in interest as if the principal were competent and not disabled.

Appellant cites *In re Estate of Anton,* 731 N.W.2d 19 (Iowa 2007), in which the Iowa Supreme Court held that an ademption had not occurred despite the presence of a similar statute. *Anton* involved the specific devise of a duplex, which was later sold by the testatrix's daughter pursuant to a durable power of attorney. The court acknowledged that according to the Iowa statute on powers of attorney, which is substantially similar to the Arkansas statute above, the sale of the duplex was binding, but the court held that the statute was "silent on the issue of who is entitled to the proceeds of the sale where the principal has made a specific bequest in a will and where identifiable proceeds are found in the estate." *Id.* at 27. The court elected to follow the approach found in *Graham, supra,* and held that in cases where

specific devises are removed from the estate as a result of an involuntary act, the devisee is entitled to only those proceeds that have not been expended on the support of the testator. In the present case, appellant argues that, likewise, he is bound by the sale of the timber, but the Arkansas statute is silent on the issue of who is entitled to the proceeds of the sale.

Finally, to dispute appellees' assertion that there has been no ademption because appellant will still receive the real property devised to him, appellant cites to *Williamson v. Merritt, supra.* In *Williamson,* a testatrix willed a savings account to her two grandnephews and later withdrew $3,000 from the account, which was deposited into her checking account. This court held that an ademption had occurred as to the $3,000 and that the grandnephews were entitled only to the remaining balance in the savings account. Appellant contends that, in the present case, the removal of the timber is analogous to the withdrawal of money from the savings account, therefore a partial ademption is a possibility.

In separate response briefs, appellees both advance the argument that there is no ademption issue because the land that was devised to appellant is still in the estate and will be received by appellant at the close of probate. Appellee Rodgers advances the additional argument that the circuit court's decision should be affirmed as it comports with both Mary's intent and the intent of the legislature. He contends that Mary's decision to appoint appellee Morgan as her attorney in fact to manage her affairs necessarily implies her intent to allow him to sell timber off of her land in order to provide for her continued care and expenses. He also claims that the circuit court's decision is in line with Arkansas's durable power-of-attorney statutes, which unlike the situation for guardians, do not provide an exception for ademption.

In support, appellee Rodgers cites cases from other jurisdictions that have held that an ademption has occurred under circumstances similar to the case at bar. For example, in *In re Estate of Bauer,* 270 Neb. 91, 700 N.W.2d 572 (2005), the Nebraska Supreme Court held that the sale of a testator's real property that had been devised to the testator's son by will, prior to the testator's death by the testator's attorney in fact, resulted in an ademption by implied revocation. In so holding, the court relied on the fact that the Nebraska legislature had previously adopted a probate code, modeled on the Uniform Probate Code, but had not adopted the amendments to the Uniform Probate Code that established a rule of non-ademption in the event of the sale of specifically bequeathed property by an attorney in fact. Because the legislature had not adopted these amendments, the court found it inappropriate to do so by judicial fiat. Appellee Rodgers notes that, likewise, Arkansas's legislature has adopted an exception for guardianships but not for attorneys in fact.

In reply to the argument that the act of appointing appellee Morgan as her attorney in fact is evidence of Mary's testamentary intent, appellant argues that such an interpretation would be inconsistent with Arkansas law stating that "[t]he decision of who, what, when, and how one's property is to be distributed upon death is clearly personal and that of the principal alone." *In re Estate of Garrett,* 81 Ark.App. 212, 218, 100 S.W.3d 72, 76 (2003). Appellant asserts that the general grant of authority to manage the assets of the principal can hardly be viewed as evidence of the testatrix's intent to revoke a specific bequest contained in her will.

Finally, appellant distinguishes the *Bauer* decision by arguing that Nebraska had a non-ademption statute modeled after the Uniform Probate Code, and the Nebraska legislature declined to adopt the amendments to the Uniform Probate Code that expanded the non-ademption statute to protect property sold by attorneys in fact. Because the legislature had failed to adopt this amendment, the court held that it would be inappropriate for the court to do so. In contrast, appellant argues, Arkansas's non-ademption statute is not based on the Uniform Probate Code, so any failure of our legislature to not adopt later amendments to the Uniform Probate Code is not evidence of legislative intent.

In its ruling, the circuit court essentially found that there could have been a partial ademption, akin to the situation in *Williamson v. Merritt, supra*. The court also found, however, that another possibility is that there was no issue of ademption because appellant would receive the land as a devise. Under either scenario, the court found, the proceeds from the sale of the timber would become part of the residuary estate.

First, addressing the possibility that there is no issue of ademption in this case, we agree with appellant that the removal of merchantable timber from real property is analogous to the removal of a portion of funds from a savings account as in *Williamson*, thus there is an issue of partial ademption. *See also Taylor v. Goddard*, 265 S.C. 327, 218 S.E.2d 246 (1975) (recognizing that sale of a cutting of timber from devised real estate was a partial ademption); *Bynum v. McDowell*, 3 Tenn.App. 340 (1926) (finding that the subsequent sale of timber by a testatrix operated as a conversion of that much of real estate into personalty and caused a partial ademption).

Second, addressing the court's alternative possibility that the sale of the timber was a partial ademption, the court's reliance on *Williamson* is somewhat problematic, as it is factually distinguishable from the case at bar. Specifically, the partial ademption in that case was caused by an act of the testator herself, and the testator's competency was not at issue. In the present case, the court's ruling essentially applied the identity theory to the facts in *Williamson*. That is, the court believed that the act of the attorney in fact, in conveying the timber deeds, resulted in a partial ademption as a matter of law, and the remaining proceeds would thus become part of the residual estate.

■ However, it is the opinion of this court that the intention theory is more in line with the importance this court has previously placed on giving effect to the testator's intent. Thus, we cite with approval the reasoning in *Graham, supra*, and hold that if the property that is the subject of a specific devise is sold by an attorney in fact at a time when the testator is incompetent, and the testator does not regain testamentary capacity before his or her death, an ademption of the specific devise does not take place as to the unexpended, identifiable proceeds of the sale. We further hold that Ark.Code Ann. § 28–68–202 does not preclude such a holding, because while the estate is unquestionably bound by the sale of the timber deeds by the attorney in fact, § 28–68–202 is "silent on the issue of who is entitled to the proceeds of the sale where the principal has made a specific bequest in a will and where identifiable proceeds are found in the estate." *Anton*, 731 N.W.2d at 27.

■ In conclusion, we hereby adopt the intention theory as the law in Arkansas. To hold otherwise would allow an attorney in fact, either intentionally or unintentionally, "to disrupt the dispositive scheme of

the testator as evidenced by his last competent act in relation to a specific devise." *In re Estate of Bierstedt,* 254 Iowa 772, 119 N.W.2d 234 (1963). We therefore reverse the circuit court's order and remand for proceedings consistent with this opinion.

Reversed and remanded.

HANNAH, C.J., and BAKER, J., dissent.

JIM HANNAH, Chief Justice, dissenting.

I respectfully dissent. The majority fails to follow the testator's intent. Mary Rodgers's will reveals no intent regarding timber on Parcels 1 and 2. Inexplicably, the majority concludes that proceeds from the sale of timber that occurred prior to Mary's death may be conveyed in lieu of timber when there is no bequest regarding "timber." [1] Further, it was the testator's intent that timber on the land could be sold during her incompetency as evidenced by the specific authority granted in the power of attorney to execute timber deeds. There is simply no merit to the idea that identifiable and unexpended proceeds from the sale must be conveyed in lieu of timber when the testator expressly indicated it could be sold.

With respect to Parcel 1, Mary conveyed "the land and mineral rights," and with

respect to Parcel 2, she conveyed "the land." The paramount principle in interpreting wills is that the testator's intent governs, and "the testator's intent is to be gathered from the four corners of the instrument itself." *Pickens v. Black,* 318 Ark. 474, 480, 885 S.W.2d 872, 875 (1994). "A specific legacy is the bequest of a particular thing, as distinguished from all others of the same or similar kind, and must be satisfied only by the delivery of the particular thing." *Kidd v. Sparks,* 276 Ark. 85, 87, 633 S.W.2d 13, 15 (1982). The specific legacy regarding Parcels 1 and 2 does not mention timber, but at Mary's death the land and mineral rights she specified in her will did exist and could be conveyed pursuant to her intent. There was no specific legacy in the timber but only in the land and mineral rights.[2] The analysis ends there.

Because there was no specific legacy in the timber, there could be no ademption, and, therefore, there is no reason to consider whether the intention theory should be adopted. The majority's decision is largely obiter dictum.

Further, the rule in Arkansas was that under the devise of a specific legacy, if "the identical thing bequeathed is not in existence, or has been disposed of, the legacy is extinguished or adeemed, and the legatee's rights are gone." *Worthen Bank & Trust Co. v. Green,* 237 Ark. 785, 788,

---

1. The majority cites *Koonce v. Fordyce Lumber Co.,* 123 Ark. 85, 184 S.W. 440 (1916) for the proposition that when land is conveyed it carries with it whatever timber is standing upon the land. However, *Koonce* concerns conveyance of a grantor by deed rather than bequest by will which is at issue here. Obviously, when land is sold and deeded by the owner to another, whatever timber is on the land is conveyed as well if no reservation has been made by the grantor. However, *Koonce* concerning a present conveyance of land by deed is of no application in the present case where a bequest by will and the intent of the

testator some twenty years before her death is at issue. Likewise, the cited case of *Buford v. Alderson,* 61 Ark.App. 156, 965 S.W.2d 802 (1998) concerns the effect of a deed of land where a timber deed had been previously granted on the same land.

2. I note that the majority indicates that Charles referred to Parcels 1 and 2 in a motion below as the "timbered tracts." The majority then uses the terms "[t]wo timbered tracts," when there is no reference to timber or timbered tracts in the will.

376 S.W.2d 275, 277 (1964) (quoting 28 Ruling Case Law, *Wills* § 341 (1921)). Now, unexpended and identifiable proceeds from the sale of a specific legacy by an attorney in fact do not adeem, and we can expect much new litigation regarding whether there was a specific legacy and whether there are identifiable and unexpended proceeds. Given the majority's broad assumption in this case that timber was a specific legacy when it is not even mentioned in the will, we can anticipate that litigation on the issue of testator intent will blossom and flourish.

I must also note that the will was executed in 1987 and Mary died in 2009. Timber changes a great deal over twenty-two years. This makes the majority's assumptions about Mary's intent regarding the timber even more troubling. To find the intent recognized by the majority, Mary would have needed to provide in her will that the land was to be conveyed with stands of timber of the size and type harvested, which, given drought, beetles, fire, other pests, and unforeseen events, would have been a remarkable feat of prognostication. As Mary indicated in her will, the specific legacy was the land, not a specific sort and stand of timber. This court has stated that it will not speculate on a testator's intent. *Edmundson v. Estate of Fountain*, 358 Ark. 302, 309, 189 S.W.3d 427, 431 (2004). The majority does more than speculate. It finds facts regarding testator intent where there are none.

The majority's holding will increase disputes and litigation among legatees and attorneys in fact. For example, under the majority's holding, it appears that an attorney in fact holds proceeds from the sale of the principal's property in trust for possible future legatees. This is so even though such future legatees hold no interest in the property or proceeds at the time of the sale or at any point prior to the principal's death. Attorneys in fact will now be sued in attempts to require them to account for proceeds from any transaction transferring the principal's wealth at any time prior to the principal's death. At death, whatever proceeds from such transactions remain become part of the residual estate. The majority is altering the law on what becomes part of the residual estate, and attempting to limit recovery under the new law to unexpended and identifiable proceeds will not limit litigation and disputes as the majority apparently hopes. This opinion will force many elderly and infirm individuals to use much costlier and more complicated guardianships. This case will have a chilling effect on those who might be willing to assume the duties of attorney in fact. While some attorneys in fact engage in nefarious and improper conduct, most honorably perform, often at no charge, a service desperately needed by the elderly and infirm among us. There are remedies for acts by attorneys in fact who abuse their position.

There is no specific legacy at issue in this case and I would affirm the circuit court. Therefore, I dissent.

BAKER, J., joins.